MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Mary E., also known as Lisa E., and of James W. who are the unmarried biological parents of the minor children, Angela E. and Teresa E. The minor children are presently six and three years of age.
The court finds that the mother and father have appeared and CT Page 6896 have court appointed attorneys. These cases have been pending in the court system since 1994. The father has not supported the children, nor has he had any physical involvement, nor has he demonstrated any interest in the children in, at least, the past three and a half years. The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court and reasonable efforts have been made to reunite the parents. The court having read the verified petitions, the social studies, and the various documents entered into evidence, and having heard the testimony of various witnesses and evaluators, makes the following findings by clear and convincing evidence.
With Respect to the Children's Father:
The petition claims that the father has abandoned his children. At the trial, he offered no evidence to refute this allegation. Dr. Bruce Freedman, the court appointed evaluator, indicated that "Mr. W. showed many signs of abandoning his children from the time that they were placed, failing to visit them, failing to pursue court or DCF involvement toward reunification, failing to satisfy conditions of his alternative incarceration program, and finally fleeing the state to avoid arrest."
Mark Dumais, the DCF social worker, testified that, on November 6, 1995, he met with father to work out needed services. The father never participated in any services and called the worker after he had fled the state to say that he would see the girls when they turned seventeen. As recently as February 17, 1997, the worker contacted the father at the Hartford Correctional Center to set up another appointment for services to be arranged. The worker heard nothing further from the father. Dr. Freedman recommended that the parental rights of the father be terminated.
With respect to the statutory grounds for termination of parental rights, the court finds by clear and convincing evidence existing at the date of trial, that the children have been abandoned by the father in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. The Court further finds that the grounds for termination have existed for more than one year. CT Page 6897
The court makes the following factual findings required by17a-112 (e):
1) Appropriate and timely services were provided by the Department of Children and Families, including counseling, transportation assistance, and visitation coordination.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the father and children, given the situation and circumstances, as far as possible. The court finds in this proceeding that the father was unable, due to his multiple substance abuse problems, or unwilling, to benefit from reunification efforts.
3) The Department, with the approval of the Court, set reasonable and realistic expectations and service agreements in order to reunify the family. There was no compliance or participation by the father.
4) The children have strong emotional ties with the foster mother who has provided the physical, emotional and educational support these children need. The children have little or no positive emotional ties to the biological father. The children have only a visiting relationship with him, not a parental relationship.
5) Finding regarding the age of the children. Angela is nearly seven years of age. Teresa is three and a half. These children require stability of placement and continuity of care.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions etc. The father has not made realistic and sustained efforts to conform his conduct to even minimally acceptable parental standards. Giving him additional time would not likely bring his performance, as a parent, within acceptable standards sufficient to make it in the best interests of the children to be reunited. In re Luis C. 210 Conn. 157; In reJuvenile Appeal 183 Conn. 11, 15.
7) Finding regarding the prevention of a parent from having a meaningful relationship etc. While the parents' means were limited, economic factors did not prevent regular, continuing contact with either the children or the foster mother, who is also the children's grandmother and the father's own mother. The unstable and assaultive behavior of the father has resulted in CT Page 6898 his present arrest and incarceration and a restraining order to protect his mother from him. The Department initially attempted to encourage contact. No unreasonable conduct is noted.
With Respect to the Children's Mother:
The Social Study for the termination of parental rights, dated March 1, 1996, and prepared by social worker, Mark L. Dumais, (Petitioner's Exhibit #6) is one of the most complete and well-organized reports ever presented to the Child Protection Session. The court places great credit on the facts set forth in the report. The report thoroughly narrates a horrible history of poly-substance abuse, bi-polar manic depression and dysfunctional conduct of the thirty-five year old mother of Angela and Teresa. If these children survive their lack of parenting by their biological parents, it is a tribute to the paternal grandmother who has raised them virtually since birth.
The Social Study documents the many varied, unsuccessful rehabilitation efforts offered to Mary E. When Mary testified in court, she admitted to entering and failing more than ten such programs. The court finds that the Department of Children and Families has made efforts which exceed the requirements of state and federal law in providing services and making rehabilitation efforts for the children's mother. The social study documents and the testimony of the witnesses verify that, at the time of the filing of the petition, in this case, March 11, 1996, clear and convincing evidence supported the termination of mother's parental rights on the ground of her failure to rehabilitate herself.
This court is well aware of the deleterious effect of prolonged temporary care of abused and neglected children. In reJuvenile Appeal (84-CD), 189 Conn. 276 (1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V., 25 Conn. App. 741,748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD (1979), at page 99.
On the other hand, the court must be mindful that, in the disposition of any case, it may consider relevant and material evidence occurring through the close of the evidentiary hearing (Practice Book § 1043.1) and further, to paraphrase the CT Page 6899 Supreme Court, . . . if the parent of a child. . . . has parenting limitations "but loves their child[ren], consistently expresses an interest in the child[ren]'s welfare, and periodically visits with the child[ren] committed to foster care, parental rights should not be terminated, since the situation affords the child[ren] both the consistency of foster parenting and the relationship with natural parent." In re Migdalia M.,6 Conn. App. 194, 207-208, 504 A.2d 532 (1986).
In this case, after the Social Study and Petition to Terminate were filed, Mary made great strides toward her personal rehabilitation. On June 18, 1996 she entered the Connecticut Valley Hospital Addiction Service Division and successfully completed, for the first time in her life, an in-patient dual diagnosis program. She left the program with a plan to establish a healthy recovery in a supportive environment (Respondent's Exhibit B). This included going to a half-way house, attending twelve step meetings, developing a relationship with women's support groups, developing a relapse prevention plan, as well as other recovery measures.
Mary subsequently entered the Trauma Resolution Program at Elmcrest Hospital, a partial hospitalization program. She was there from shortly after her date of discharge in the prior program, October 4, 1996, until December 23, 1996, when she was discharged "with maximum benefit." (Respondent's Exhibit C) Mary next entered SCADD, Inc. where she successfully completed a three month commitment at Altruism House. The discharge summary (Respondent's Exhibit D) indicates that all drug screens were negative for presence of drugs or alcohol. The report noted that she was in compliance with DCF expectations to maintain weekly visits with her children.
While it is clear that, prior to the institution of these termination proceedings, Mary was not in compliance with the court approved expectations, she is in compliance at this time. She keeps her appointments with DCF; she visits her children as often as permitted; she has remained free of illegal drugs and alcohol for nearly one year; and she has attended in-patient and out-patient counseling and therapy to great advantage. She attends Alcoholics Anonymous and is committed to her recovery.
Elise Alsop, a social worker at the Care Center of St. Raphael's Hospital, is presently the mother's therapist. She testified that Mary (Lisa) is engaging in relapse prevention CT Page 6900 therapy, and that she is processing through the multiple losses and grief issues in her life. She believes that Mary is demonstrating enormous personal courage; she manages her medications and is compliant in every way. She is maintaining a social network that is very supportive of her recovery; ". . . she's a writer, a musician, a very gifted person, she's a bright woman who has been through hell." The therapist concluded by indicating that the mother is committed to a sober lifetime; ". . . you can't fake it."
Based on the foregoing, the court finds that the children have previously been adjudicated neglected and that the mothermay have achieved such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the children, such parent could assume a responsible position in the lives of the children, sometime in the future. General Statutes 17a-112 (c)(3)(B). There is not sufficient evidence, at this moment, to prove by clear and convincing evidence that she has failed to achieve such degree of rehabilitation as would encourage the belief that, within a reasonable time, she may be able to meet the needs of the children.
The court remains hopeful. The court may be exalting hope above past performance, which, of course, is the best predictor of future behavior. The court is further aware that relapse is a normal and expected part of recovery, and that the mother will require extensive support and encouragement to maintain her sobriety. It would be cruel to discourage her in her efforts toward recovery by terminating her parental rights at this time. Considering the needs of the children for permanency, it is appropriate for the children to remain with their paternal grandmother. If the mother goes into a protracted period of relapse, her rights to these children should be terminated. She has had more chances than she probably deserves. She has one last chance to maintain her legal status.
Adjudication
Accordingly, the petition to terminate the parental rights of the mother is dismissed without adjudication of her rights and without prejudice to the petitioner to bring these same facts and circumstances before the court again if the mother fails in her bid for sobriety. The children are presently committed to the Commissioner of the Department of Children and Families through CT Page 6901 February 23, 1998. As to the mother, the children shall remain committed.
With respect to the statutory grounds for termination of parental rights of the father, the court finds by clear and convincing evidence that with respect to James W., the male biological parent of these children, he has failed to support these children or manifest any parental interest, whatsoever, and has abandoned them as that term is defined in General Statutes § 17a-112 (c)(3)(A).
The court further finds by clear and convincing evidence that, with respect to the named father, there is no on-going parent-child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing day-to-day basis the physical, emotional, moral or educational needs of the children, and that to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to best interest of these children. The court finds that these grounds have existed for more than one year.
DISPOSITION
Based upon the foregoing findings, the court determines that it is in the children's best interest for a termination of parental rights to enter with respect to the male biological parent, James W., and, accordingly, a termination of his parental rights is ordered. Since the mother's rights have not been terminated, it is not necessary to order that the Commissioner of the Department of Children and Families be appointed statutory parent for these children.
Francis J. Foley, Presiding Judge Child Protection Session