## IN RE ALEXANDER V.* (9408)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued May 29—decision released September 17, 1991

*John R. Williams,* with whom were *Diane Polan* and, on the brief, *Sue L. Wise,* for the appellant (respondent).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Susan T. Pearlman,* assistant attorney general, with whom were *Patricia Lilly Harleston,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Nina F. Elgo* and *Carolyn K. Querijero,* assistant attorneys general, for the appellee (petitioner).

*Howard Lawrence,* for the minor child.

DUPONT, C. J. The respondent appeals from the judgment that terminated her parental rights with respect to her minor son. The respondent contends (1) that the federal and state constitutions[1] imposed a duty on the trial court to hold a hearing to determine if she was competent to understand the termination proceeding and to assist counsel effectively and (2) that she was ineffectively represented by counsel. The respondent does not challenge the merits of the court's judgment.[2] We affirm the trial court's decision to terminate her parental rights.

Alexander V. was born to the respondent on July 14, 1985. Shortly thereafter, the department of children and youth services (DCYS) received a referral from Yale-New Haven Hospital concerning the respondent's ability to care for her child. Since that time, Alexander has been in and out of foster care and has been under the supervision of DCYS. Since 1988, he has resided in the same foster home. DCYS filed a petition to terminate the respondent's parental rights, and, after a three day trial, the court rendered judgment terminating the respondent's parental rights.

---

[1] "The due process provision of the Connecticut constitution has the same meaning and imposes similar limitations as that of the federal constitution." *State* v. *Anonymous,* 179 Conn. 155, 162 n.4, 425 A.2d 939 (1979).

[2] The petition was based on three grounds of General Statutes § 17a-112 (b). The trial court concluded that the state had proved all three grounds by clear and convincing evidence.

It is clear from the record that the respondent's mental status was a significant issue in the case. Her mental stability as it affected her ability to raise her child permeated the substantive issues. The issue of her competency to understand the proceedings and to assist her counsel in those proceedings, however, is raised for the first time on appeal. The respondent did not, therefore, preserve this claim for review. She can prevail on it only if "*all* of the following conditions have been met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–240, 567 A.2d 823 (1989).

Here, there is an adequate record and a claim of constitutional magnitude implicating a fundamental right. The right of a parent to raise his or her children has been recognized as a basic constitutional right. *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Lehrer* v. *Davis,* 214 Conn. 232, 236, 571 A.2d 691 (1990); *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 435, 446 A.2d 808 (1982); *State* v. *Anonymous,* 179 Conn. 155, 162–63, 425 A.2d 939 (1979). Thus, the first two *Golding* conditions are met, and we next consider whether a constitutional violation clearly exists and whether the respondent was clearly deprived of her right to a fair trial.

Whether a constitutional violation exists depends on whether procedural due process was accorded to the respondent. The respondent asks us to conclude that the liberty interest of a parent in his or her parental rights is sufficiently similar to the liberty interest of

a criminal defendant, thereby requiring, as a matter of procedural due process, a hearing to decide if a parent is competent to understand the proceedings and to assist counsel. The respondent claims, in effect, that the procedural protection set forth in General Statutes § 45a-708 (a)[3] is insufficient to protect her rights and seeks a procedure similar to that accorded to defendants in criminal cases. See General Statutes § 54-56d. The respondent claims that the same consequences should ensue if she were to be found incompetent as are provided in § 54-56d, including a stay of the termination proceeding.

*In re Juvenile Appeal (Docket No. 10155),* supra, relies on *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to determine the elements to be considered and weighed in deciding what is required by due process in a termination of parental rights proceeding. The three elements to be considered, as set forth in *Mathews,* are "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge,* supra, 335. Phrased differently, we must determine if the private interest of the respondent in the companionship, love and control of her child is at risk of being erroneously

---

[3] General Statutes § 45a-708 (a) provides: "When, with respect to any petition filed under section 17a-112, section 45a-715 or section 45a-716, it appears that either parent of the child is a minor or incompetent, the court shall appoint a guardian ad litem for such parent. The guardian ad litem *shall* be an attorney-at-law authorized to practice law in Connecticut or any duly authorized officer of a child-placing agency if the agency is not the petitioner." (Emphasis added.)

terminated because of the lack of an adequate procedural safeguard that could be provided for her without disregarding the state's interest in the well-being of the child and the fiscal and administrative burden on the state.

The parent's desire for and right to "the companionship, care, custody, and management of his or her children" is a fundamental interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley* v. *Illinois,* supra; see also *In re Juvenile Appeal (Docket No. 10155),* supra. Thus, the first factor of *Mathews,* namely, the respondent's interest in retaining her parental rights, is present. That interest is basic and private, and subject to complete destruction by state action.

The second factor of *Mathews* to be considered is whether the failure to hold a hearing to determine the respondent's ability to comprehend the proceedings and to assist counsel creates a risk of an erroneous deprivation of her parental interest. The respondent's position is that the trial court should have ordered, or her counsel should have sought, a hearing to determine her competency. The risk of an erroneous deprivation is to be tested by the record. See *In re Juvenile Appeal (Docket No. 10155),* supra, 436–37.

The record suggests that the respondent understood the nature and gravity of the hearing. In the course of her dealings with DCYS, she had six court-appointed counsel, none of whom raised any question as to her mental competency. Not one of them, either in prior cases or in this one, questioned her capability of assisting in the preparation of her case. She participated in the termination proceeding by testifying about her relationship with her child. Finally, in response to a direct question by the court, she indicated that she understood that the proceeding concerned the termination of her

rights to her child. Although the respondent was not present during the entire three consecutive days of the termination proceeding, she was aware of its time and place. We see no evidence in the record that would compel the trial court to question the respondent's competency.[4]

The respondent requests the same due process rights in parental termination proceedings as are granted in criminal trials. Different interests, however, are involved in civil cases than in criminal cases. The legislature has recognized this distinction by enacting different procedures to protect the rights of incompetent parties in civil and criminal actions. Criminal trials are governed by § 54-56d, which provides that "[a] defendant shall not be tried, convicted or sentenced while he is not competent" and requires the moving party to prove by clear and convincing evidence that the defendant is not competent. General Statutes § 45a-132 controls most civil cases and provides that a judge may appoint a guardian ad litem for any minor or incompetent.[5]

A criminal case and most civil cases are two-sided, whereas termination of parental rights cases are three-

---

[4] The respondent points to a finding that she was incompetent to stand trial for a period of two months in a related criminal proceeding as evidence of her possible mental incompetence to stand trial. That finding, however, was made six months after the present proceeding, was obviously not known to the trial court, and is not evidence of her mental condition at the time of trial.

[5] General Statutes § 45a-132 provides in pertinent part: "(a) In any proceeding before a court of probate or the superior court . . . the judge or magistrate may appoint a guardian ad litem for any minor or incompetent, undetermined or unborn person . . . if it appears to the judge or magistrate that one or more persons as individuals . . . have or may have an interest in the proceedings, and that one or more of them are minors, incompetent persons . . . at the time of the proceeding.

"(b) The appointment shall not be mandatory, but shall be at the *discretion* of the judge or magistrate." (Emphasis added.)

sided, involving the child, the parent and the state. The legislature has recognized this distinction and has specifically provided for the appointment of a guardian ad litem to represent the interests of an incompetent parent in such cases. General Statutes § 45a-708 (a). Section 45a-708 (a) provides for a different treatment of respondents in a parental termination action than is provided by other statutes for other types of parties.

The respondent here was at all times represented by appointed counsel, and she has not claimed that the trial court improperly failed to appoint a separate guardian ad litem.[6] The legislature has provided a mechanism for protecting allegedly incompetent parents in termination of parental rights proceedings. Here, the record does not indicate that there was a need to use that mechanism. The risk of an erroneous deprivation of the respondent's parental rights because of a lack of a competency hearing, therefore, was minimal, if the risk existed at all.

The third balancing factor of the *Mathews* test concerns the government's interest as parens patriae in

[6] In the event that a parent is represented by a guardian ad litem, the duties of an appointed guardian are to take all necessary steps to promote and protect the ward's interest in the litigation. *In Interest of JIW,* 695 S.W.2d 513, 518 (Mo. App. 1985).

Similarly, the role of counsel for a parent is to explain fully the nature of the proceedings to the client, determine the client's informed position, negotiate and advocate for necessary and appropriate services, and oppose the petition in accordance with a determination of the client's position.

We need not decide whether a parent whose rights are subject to termination might require both appointed counsel and a guardian ad litem because of a potential conflict of interests. See *In Interest of JIW,* supra (holding that appointing both counsel and a guardian ad litem would be duplicative); but see *South Carolina Department of Social Services* v. *Powell,* 278 S.C. 79, 292 S.E.2d 299 (1982); *South Carolina Department of Social Services* v. *McDow,* 276 S.C. 509, 280 S.E.2d 208 (1981) (requiring the appointment of both counsel and a guardian ad litem). We also need not decide whether General Statutes § 45a-708 (a) would allow one person to fulfill the function of both counsel and guardian ad litem.

the termination of parental rights. " '[T]he ultimate standard underlying the whole statutory scheme regulating child welfare is the "best interest of the child." ' " *In re Juvenile Appeal (Docket No. 10155)*, supra, 439. Because of the psychological effects of prolonged termination proceedings on young children, time is of the essence in custody cases. Id. On the facts of this case, we conclude that it is not necessary to impose on the state the fiscal and administrative burden of a competency hearing similar to that provided in criminal cases by § 54-56d.[7]

As applied to the facts of this case, the balancing test of *Mathews* does not support the respondent's claim that a constitutional violation clearly existed and clearly deprived her of her right to a fair trial. The third prong of *Golding* is, therefore, unsatisfied.

A parent's right to the effective assistance of counsel in termination of parental rights cases derives from *State* v. *Anonymous,* supra.[8] Under that standard, an appellant must prove that both counsel's trial performance fell below the range of competence of ordinary skill and the outcome of the termination of parental rights proceeding would have been different had the representation been competent. The respondent's claims of ineffectiveness are hydra-like. She claims var-

---

[7] Although General Statutes § 45a-708 (a) does not provide for any particular procedure for the initiation of a competency hearing, there may be parental termination cases where due process would require a trial court to hold a competency hearing on its own motion. See *Statewide Grievance Committee* v. *Rozbicki,* 219 Conn. 473, 484, 595 A.2d 819 (1991).

[8] Ordinarily, the right to effective assistance of counsel is a right accorded to defendants in criminal cases, as opposed to civil cases. "Where, however . . . a statute . . . or practice book rule . . . mandates the assistance of counsel, it is implicit that this means competent counsel. Because of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel." *State* v. *Anonymous,* 179 Conn. 155, 160, 425 A.2d 939 (1979).

ious errors, such as ineffective cross-examination, failure to object to questions, and failure to move to strike testimony. These claims are baseless.

The record reveals overwhelming admissible expert and documentary evidence that supported the trial court's judgment on all three grounds alleged by the petitioner. In view of that evidence, we believe that the respondent has failed to meet her burden of proving that any alleged inadequacy affected the outcome of the termination proceedings.

The respondent's claim that the failure to seek an evidentiary hearing regarding her competency to comprehend the proceedings and assist counsel effectively was tantamount to ineffective assistance of counsel falls with her procedural due process claim.

The respondent also argues that counsel was incompetent by allowing the trial to proceed when she was not present. In the case of *In re Jonathan P.*, 23 Conn. App. 207, 213–14, 579 A.2d 587 (1990), we held that where the parent was precluded from participating in part of a hearing because he was imprisoned, it was plain error for the court to have proceeded without the parent's presence. This case, however, is inapposite. It is apparent from the record that the respondent was present for part of the proceedings, had full knowledge of the hearing dates, and was able to come to court. Under these circumstances, we believe that the respondent waived her right to be present at trial. See *State v. Durkin*, 219 Conn. 629, 595 A.2d 826 (1991); *In re Juvenile Appeal (Docket No. 10155)*, supra, 440–41.

The judgment is affirmed.

In this opinion NORCOTT, J., concurred.

HEIMAN, J., concurring. While I agree with the judgment affirming the trial court, I do not agree with all

of the legal analysis or legal conclusions contained in the majority's opinion, and, thus, I write separately to express my departure from the reasoning of the court and my reasons therefor.

In the first instance, parents have a significant, constitutionally protected, right to raise their children without the coercive interference of the state. *Lehrer* v. *Davis,* 214 Conn. 232, 237, 571 A.2d 691 (1990). This does not mean, however, that the family is beyond state regulation. *McGaffin* v. *Roberts,* 193 Conn. 393, 401, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985). What it does mean is that if the state wants to exercise its duty to ensure the welfare of the child, it must afford procedural due process to all of the parties. *Lehrer* v. *Davis,* supra.

I do not agree with the majority when it opines that General Statutes § 45a-708 (a) provides, in itself, adequate due process protection in a case where the record reflects that a parent, whose parental rights are being terminated, is incompetent at the time of trial to understand the nature and import of the proceeding and to assist counsel in protecting his or her interests. In such a case, due process demands that the trial court act promptly to determine the competency of the respondent. Until such a determination is made, the scale that permits state action has not yet tipped to such a degree as to permit termination. The risk of erroneous deprivation of parental rights under such circumstances is too great; see *Mathews* v. *Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); to satisfy the requirement of procedural due process. *Lehrer* v. *Davis,* supra. While the requirement of due process does not mandate any particular procedure, such as an adherence to the format of General Statutes § 54-56, it does require that certain safeguards exist in what-

ever procedural form is afforded. *Statewide Grievance Committee* v. *Rozbicki,* 219 Conn. 473, 484, 595 A.2d 819 (1991).

The fact that protection of procedural due process rights may involve some fiscal or administrative burden is not an excuse to refuse such protection where, as here, no other adequate protection exists. The extent of the process that is due "depends upon the intrusiveness of the competing state concern." *Lehrer* v. *Davis,* supra, 237–38. Here, the result would be the total elimination of the parent-child relationship, the most serious and intrusive action that is possible to contemplate in this area of the law. See *Lassiter* v. *Department of Social Services,* 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). Thus, in an appropriate case, due process demands that the court act to determine the competency of any party to understand the nature of the proceedings and to assist counsel. See *Mathews* v. *Eldridge,* supra. In this case, the record does not support the claim that such action was necessary on the part of the trial court.

Accordingly, while I concur in the result, I do not endorse all of the legal analysis by which the majority reaches its conclusion.