MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Kathleen E. and Michael E., who are the biological parents of the minor child, Ashley Marie E. (herein after called "Ashley.") The minor child, Ashley, is presently seven years of age. She has lived for the past two years with specialized care foster parents who wish to adopt her if the parents' rights are terminated. The child, by all accounts, has achieved normal developmental milestones, is happy, well-adjusted, bonded and views her foster parents as her natural parents.
The male biological parent of Ashley does not object to the termination of his parental rights and joins in the request to allow the child to be adopted. The child, herself, vigorously wishes to be adopted. A Consent to Terminate Parental Rights was filed by Michael E. at the commencement of trial. His consent was found to be voluntarily and knowingly made with the advice and assistance of competent legal counsel, and with a full understanding of the consequences of his consent.
The court finds that the mother has appeared and has a court appointed attorney. The father has been served, had counsel appointed and appeared for the contested hearing. The court has jurisdiction in this matter; there is no pending action affecting custody of the child in any other court, and reasonable efforts have been made to reunify this family. CT Page 9536
The court, having read the verified petitions, the social studies and the various documents entered into evidence, and having heard the testimony of various case workers, makes the following findings by clear and convincing evidence.
The mother, Kathleen E., attended the hearing with counsel, cross examined the witnesses and contested the petitioner's case, and is in opposition to the termination of her parental rights. The court finds the following relevant facts. The child was born on June 8, 1990. The parents were married but lived with each other in a completely dysfunctional setting which included physical, mental and verbal abuse. In May, 1994 Ashley disclosed sexual molestation by her father, thus bringing this family within the protective scrutiny of the Department of Children and Families (DCF).
Ashley's female biological parent, Kathleen, came from very sad and tragic circumstances. She was one year old when her mother died in a house fire. She went to live with a local family and it was not until she was eight years of age that she learned that they were not her real parents. When she was seven she reported to her school teacher that her "father" was sexually molesting her. Police authorities were not able to substantiate the allegations and no charges were brought against the man. Kathleen was placed in foster care until she was eighteen years of age.
Kathleen married in 1982 and had three children. The parents separated because of the husband's abuse and drinking. Kathleen left with her two daughters, and left an infant son with the father. The son died at the age of five months from bronchial pneumonia. Kathleen had a nervous breakdown, and the daughters returned to the father who subsequently divorced Kathleen taking full custody of the daughters.
Kathleen subsequently met and married Ashley's father on Valentine's Day, 1989. Ashley was born in 1990. Kathleen describes her relationship with her second husband as abusive in all regards. They separated in May of 1994 due to the allegations of sexual molestation of Ashley. Kathleen met James C. a month later and engaged in another abusive relationship. DCF arranged for services to be provided to Kathleen to help her deal with the issues of sexual molestation. Mother was advised not to allow the father to be present around the child. CT Page 9537
Although Ashley's parents had separated, immediately following the indication by the police that they had insufficient evidence to prosecute the father in December of 1994, Kathleen agreed with the father to allow Ashley to spend a week-end with her father. When DCF found out about this arrangement from the agencies providing services to this family, DCF sought and obtained an Order of Temporary Custody on January 9, 1995 (Keller, J.).
Kathleen began weekly visits with Ashley in March of 1995. In June, Ashley was admitted to the Acute Behavioral Crisis Unit of Mount Sinai Hospital due to aggressive and self abusive behaviors and temper outbursts (Petitioner's Exhibit 6).[2]
During her admission to the hospital, Ashley spontaneously reported that her father had touched her "private parts", and ". . . sexualized play themes were evident in Ashley's fascination with undressing the dolls and positioning them face to face to kiss." It was recommended that Ashley be placed in a specialized foster care family. This recommendation resulted ill Ashley's present placement.
Ashley began therapy in September 1995 with a therapist from the Children's Center who testified at the trial. Initially, Ashley presented as an oppositionally defiant child. Progress was made with Ashley until she had two visits with her mother in November and December of 1995. Immediately following these visits Ashley demonstrated again the self-abusive conduct which was, to the therapist, ". . . consistent with a child, sexually abused, reliving those experiences." Visitation was subsequently discontinued. Kathleen has not seen Ashley since that time, and Ashley has made remarkable progress and bonded to her present foster family.
Services to reunify Kathleen to Ashley were offered from the beginning of DCF involvement. Those services are set forth in Petitioner's Exhibits 1, 8 and 9. The court finds that Kathleen has problems in the areas of parenting, her own tragic past, her daughter's abuse, her inability to select non-abusive relationships, self-esteem and depression. She did not actively and aggressively seek help for these problems. In May of 1996 she began treatment at the Counseling Center of a local hospital for issues regarding ". . . mood disturbance and interpersonal/role transition difficulties and possible loss of parental rights." The admitting summary indicates that Kathleen was attending at CT Page 9538 the direction of DCF, but she was unsure of why she needed counseling. She attended approximately half of her group sessions. (Petitioner's Exhibit 5 and Respondent's Exhibit A).
ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the Court finds by clear and convincing evidence that this child was previously found to be have been neglected on November 29, 1995 (Dyer, J.) The father has consented to the termination of his parental rights and this consent has been accepted by the court.
The Court further finds that the mother has failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of this child. G.S. § 17a-112(c)(3)(B) The court finds that this ground has existed for more than one year.
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e), they do not apply to the consenting father, and are made with respect to the mother only.
1) The timeliness, nature and extent of services offered. The court finds that parental, psychological and psychiatric services were offered, visitation was offered and specialized foster care was provided by DCF.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents had more than enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The mother of the child was offered services she did not choose to accept. Only belatedly and tepidly, did she enter counseling. It is not clear that even to this day she recognizes her need for therapy.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with the expectations, described more fully in the social study. She appeared more interested in pursuing her adult relationships than resolving her multitude of personal troubles. CT Page 9539
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that the child is bonded to her present foster family, considers herself part of the family and that no presently existing emotional bonds will be broken by termination of the parents rights.
5) As to the age of the child. The child is seven years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. Inre Juvenile Appeal (84-CD), 189 Conn. 276 (1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
6) The efforts the parent have made to adjust his circumstances or conditions. The Court finds that the mother has been unsuccessful in making any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification. The father has consented to the termination of his rights.
7) The Court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the child. There was no unreasonable conduct noted by DCF. The child's reaction to the visitation robustly indicated that continued visitation was not appropriate.
DISPOSITION
Based upon the foregoing findings, the court determines that it is in Ashley's best interest for a termination of parental rights to enter with respect to the mother, Kathleen E., and the male biological parent, Michael E., and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for this child for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The Commissioner shall file with this court not later than ninety days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal law. CT Page 9540
Francis J. Foley, Presiding Judge Child Protection Session