MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Sandra M. and Barry E., who are the biological parents of the minor children Jazzlyn, born March 22, 1990, Yolanda, born May 24, 1991, Byran, born November 27, 1992, Kimberley, born November 22, 1993, and Leona Renee, born October 11, 1996.
On the day set for trial on the termination petition, the children's mother agreed in open court that it was in the children's best interest for her to allow the children to be adopted, and, accordingly, she consented to the termination of her parental rights. She executed the necessary forms, was canvassed by the court, and was found to have knowingly and voluntarily consented with a full understanding of her legal rights and the consequences of her act. She was represented by counsel, who was present and assisted her in these proceedings. The petitioner orally moved to amend the petition to delete the fault grounds for termination and substitute the ground of consent as to the mother. Without objection, the court granted the motion.
The children's male biological parent did not consent and, accordingly, the petitioner introduced exhibits and testimony in support of the petition. The petitioner orally moved to amend the petition as to Leona to allege the additional ground that the child has been found in a prior proceeding to have been neglected, and that the father has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in her life. The male biological parent testified in his own behalf.
The court has considered the testimony and evidence and finds the following facts, by clear and convincing evidence. The Department of Children and Families, (DCF), has been actively involved with this family since 1988. Two older children of the respondents who are not the subject of this petition, have been removed from the home and the respondent's parental rights as to CT Page 9795 those children were terminated on April 4, 1991. Two years later, on July 16, 1993, DCF filed petitions in the interest of Jazzlyn, Yolanda and Byran as neglected children. When Kimberley was born in 1993, DCF intervened and later, when Leona Renee was born in 1996, DCF again intervened to protect the seventh child of the family. Yolanda, Bryan, Kimberley and Leona were all born with cocaine in their systems. Yolanda, Byran and Leona also had syphilis at birth.
The court finds that the mother has appeared and has a court appointed attorney. The court finds that the father has been served, had counsel appointed, and appeared for the contested hearing. The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court, and reasonable efforts have been made to reunify this family. The father, Barry E., attended the hearing with counsel, offered evidence, contested the petitioner's case, and testified himself in opposition to the termination of his parental rights.
The court finds the following facts. The parents were unmarried but lived with each other in a completely dysfunctional setting which required immediate intervention by the Department of Children and Families ("DCF"). Mother had used cocaine and probably alcohol right up to the eve of the children's births. The youngest child left the hospital at birth directly into a foster home. The other four children were ordered committed to DCF on August 3, 1994, and in August 1996, were placed in a relative placement with the paternal aunt with whom the children remain today. The children, except for Jazzlyn, are relatively happy, well-adjusted and bonded, and view their foster parents and the paternal aunt as their psychological parents. Jazzlyn has experienced out of control behavior as recently as March of 1997, when she was hospitalized at Elmcrest Hospital until July 10, 1997.
The male biological parent, Barry E., is presently thirty-eight years of age. He was born in Alabama, the seventh of ten children. He indicates that, in addition to his children by Sandra, he has four additional older children from prior relationships. He has a history of drinking excessively and of drug usage, but claims to be free now of illegal substances. He has, however, been able to work at painting, electrical work, repairs and for nearly a year prior to this hearing, he has worked at a bedding store working long hours at $8.75 per hour. He testified that he worked at that job from April, 1996 until CT Page 9796 June, 1997, when he was fired. He did not pay and child support for the children because he didn't believe he had been ordered to do so, even though his federal income tax refund had apparently been seized through support enforcement personnel. Barry never made any effort to see his youngest daughter because ". . .I forgot what happened, I was calling Sandra, but I didn't know nothing from there." He has never visited or seen this child.
Barry failed to attend a court ordered psychological evaluation, indicating that he had a problem with communication. The evaluation had been especially arranged to accommodate his schedule. He is participating in drug screenings as part of his current probation, but he has not attended anger management classes, required of him as a result of his numerous domestic violence problems with the children's mother.
Barry's criminal history is very impressive. (See petitioner's exhibit 8.) No juvenile record was offered, but his adult record shows his first incarceration at Cheshire Correctional Institution when Barry was just eighteen years old; three years for assault in the second degree. He has had a total of 10 arrests in Connecticut as an adult and he indicates that while he and the children's mother had an altercation in New York, he does not recall an arrest in that state. Although his testimony was confusing with respect to dates, he testified that he was incarcerated in Texas on a possession of drugs charge (cocaine) from December, 1994, to March, 1995.
On the morning of this trial, Barry was late in appearing because he was in the criminal court having his most recent arrest for criminal mischief, interfering with a police officer and disorderly conduct resolved by a nolle in Hartford. His most recent conviction occurred on March 3, 1997, for assault in the 3rd degree, for which he was sentenced to one year in jail, execution suspended, with two years of probation, and violation of a protective order, for which he received an identical concurrent sentence. He was released from his most recent incarceration in April of 1996. He has testified to completing an alcohol and drug counseling program through the Connecticut Half-way House.
Barry's notion of parenting is to occasionally visit the older children at his sister's house. He is living with a "girlfriend" at the present time. In the three years since these children have been committed he has done nothing to present a CT Page 9797 comprehensive plan for the care of the children. He is content that the four older children live with his sister. He has made no concerted effort to visit or even to view his youngest off-spring. He has no appreciation or understanding of the children's special needs or of the concept of permanency planing for the children. Assuming full time responsibility for the care of these children is not in his near or long term planning.
The court finds that Barry E. has procreated these children but has not parented these children, nor has he met the commonly understood obligations of parenthood:
 "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." In re Juvenile Appeal (Docket 9489), 183 Conn. 11, 15, 438 A.2d 801 (1981) quoting In re Adoption of Webb, 14 Wash. App. 651, 657, 544 P.2d 130 (1975).
 ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that the children have previously been adjudicated neglected; the four older children on August 3, 1994 (McWeeny, J.) and Leona on November 12, 1996 (Teller, J.), and that the father has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the ages and needs of the children, such parent could assume a responsible position in the lives of the children. General Statutes 17a-112 (c)(3)(B). The court finds that this ground has existed for more than one year with respect to the four older children, and the court finds that, given this man's failure to even visit the infant Leona, the one year time limit should be, and is, waived, in light of the totality of circumstances, as the one year rule relates to Leona.
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e) as they relate to the non-consenting male biological parent: CT Page 9798
1) The timeliness, nature and extent of services offered. The court finds that services were offered, visitation was offered and foster care was provided by DCF. Barry was generally uninterested or unavailable for the delivery of more extensive services. Services were provided also through his probation office.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. This parent had more than enough time to demonstrate his desire and concern for reunification and to achieve rehabilitation. The father of the children was offered services he did not choose to accept. He conducted himself and, socially unacceptable fashion, resulting in his incarceration on several occasions and, accordingly, was not available for the delivery of services or to serve as a parent for his children.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The male biological parent did not enter into any expectations since his personal investment in this entire case was, at best, modest. He did not appear in court for the adjudications and was therefore not available for meaningful discussions regarding expected conduct. This court finds that criminal conduct is unacceptable, with or without, court approved expectations. Barry's failure to avoid further criminal involvement constituted a violation of normal parental expectations.
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that the children are bonded to their present foster placements, and consider themselves a part of the family, and that no emotional bonds will be broken by termination of the parents' rights. Barry E. has only a nominal visiting relationship with the children. The children cannot look to this person for shelter, food, clothing, protection, security, guidance, education and daily availability. He does not offer permanence and stability to these children.
5) As to the age of the child. The children range in age from almost one to age seven. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276
(1983). The Appellate Court has also correctly noted, "[b]ecause CT Page 9799 of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re AlexanderV., 25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979). A permanent resolution of this case is in the children's best interest.
6) The efforts the parents have made to adjust their circumstances or conditions. The father's unwillingness to participate in psychological evaluation, his violation of the criminal laws, and his lack of meaningful determination to provide a home for his biological off-spring, indicate an unwillingness to adjust his circumstances appropriately.
7) The court finds that there has been nothing to prevent the father from maintaining a meaningful relationship with the children. There was no unreasonable conduct noted by DCF. The foster mother of the older children has provided basically an open door policy on visitation.
DISPOSITION
Based upon the foregoing findings, the court determines that it is in the children's best interest for a termination of parental rights to enter with respect to the mother Sandra M., and the male biological parent Barry E. and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for the children for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court, no later than ninety days following the date of judgment, a written report of efforts to effect such permanent placement and shall file further reports as are required by state and federal law.
Francis J. Foley, Presiding Judge Child Protection Session