MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Connie R. and Hiram R., who are the biological parents of the minor children, Alicia and Veronica. They were born on December 7, 1983, and September 23, 1986, respectively. They are presently fourteen and eleven years of age.
The parents have been served and they have actual notice of the pendency of the proceedings. Counsel have been appointed to represent the parents. The attorneys have met with their clients and appeared on behalf of the parents at trial. The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court and reasonable efforts CT Page 920 have been made to reunify this family. The parents were unable or unwilling to benefit from services offered for the reunification of the parents with their children.
The male biological parent of the girls has taken little interest in the children's life. He was offered the opportunity to have visitation with the children and was told that if he did not invest himself in the child's life that his parental rights would be terminated. He has expressed an interest in visiting the girls "once in a while". He was told to contact the children's therapists at the Wheeler Clinic to set up a visitation meeting. He has not done that. He failed to cooperate with DCF for the delivery of services and failed to appear for trial.
The children's mother has appeared during the pendency of the case but on the date set for the termination trial, she failed to appear in court. She appeared in the Child Protection Session of the Superior Court on July 15, 1997, with her attorney. Based upon representations invest himself in the child's life that his parental rights would be terminated. He has expressed an interest in visiting the girls "once in a while". He was told to contact the children's therapists at the Wheeler Clinic to set up a visitation meeting. He has not done that. He failed to cooperate with DCF for the delivery of services and failed to appear for trial.
The children's mother has appeared during the pendency of the case but on the date set for the termination trial, she failed to appear in court. She appeared in the Child Protection Session of the Superior Court on July 15, 1997, with her attorney. Based upon representations made to the Court that Alicia wanted to maintain contact with her mother, and further predicated upon a report filed by Dr. David Mantell, the court appointed psychologist, that termination at the moment in time might not be appropriate, the Court allowed the case to be reassigned for hearing in January, 1998. During the period of the continuance, the respondent mother was to have supervised visitation with Alicia under the supervision of Alicia's therapist at the Wheeler Clinic. It was believed that this would allow time for Alicia to either further bond with her mother or for her to come to terms with the loss and close this chapter in her life.
Following the July 15, 1997, case status conference, an agreement was reached and filed with the court regarding a postponement of the July trial. Visitation was arranged for CT Page 921 Connie and confirmed for August 13, 1997, at 4:00 PM. Laura Renfro, Alicia's therapist arranged the meeting at her office at the Wheeler Clinic. Louise Irwin and Shirley Littlejohn came from DCF. Alicia was there. Mother failed to appear. She called DCF a couple of days later to set up another visit.
A second meeting was set and confirmed for Sept. 3rd at 4:00. Again, Louise Irwin came to the office of Laura Renfro, with DCF worker Kevin Outar. Alicia was brought to the meeting. Connie did not appear for the visit.
A third visit was arranged for September 9, 1997 at 1:00 PM. Kevin Outar testified that the social workers, therapist and child stayed from 1:00 PM to 4:00 PM to see if Connie might arrive late. She did not.
Thereafter, on November 12, 1997, Laura Renfro appeared at a hearing for an in court review of the case. She was qualified as an expert in family counseling. She testified to the mother's failure to attend the visitation sessions and the impact upon the child. She indicated that the counseling would focus principally upon bringing closure to the relationship between the child and the mother. (See exhibit # 7) The court entered a finding that no further efforts at rehabilitation need be made by DCF and that further visitation efforts were to end. It was reported to the court that the male biological parent had not seen the children or made any. efforts to contact DCF or the children in over a year.
The court having read the verified petitions, the social studies, the various documents entered into evidence, and having heard the testimony of the case worker, makes the following findings by clear and convincing evidence.
The children have lived for the past three years with the same foster parents who assumed their care immediately after placement on May 27, 1994. The foster parents are strongly committed to the girls. The children have, by all accounts, achieved normal developmental milestones, are relatively happy, well-adjusted, and bonded with their foster parents. Alicia, who lived for nearly seven years, in and out of the care of her mother and grandmother, has maintained some contact with her mother by phone and the occasional, unplanned and unexpected visit. Alicia has been reluctant to let go of her relationship with her mother, who has continuously disappointed Alicia by CT Page 922 failing to recover from her addictions and by failing to maintain regular contact. Alicia does not want to be responsible for the decision to terminate her mother's rights.
Mother has substance abuse problems which are ongoing. She is only able to maintain sobriety, if at all, in structured residential programs. She does not participate in follow-up programs and quickly relapses. The Hartford Dispensary reports Connie to be positive for heroin as recently as last month. She is an unrecovered substance abuser.
On September 7, 1994, the children were adjudicated to be neglected and uncared for. The children have been in DCF care since that date. On that date expectations were prepared and signed by the mother.(Exhibit # 3) The social studies (Exhibits 1 and 2) narrate in great detail the history of personal failures of Connie to rehabilitate herself. Other reports detail the variety of services which were offered to her individually and as a parent, to no apparent benefit. She was last in treatment at the Rushford Center for substance abuse treatment. Connie relapsed after the residential treatment ended; she was homeless; she had no employment. She is still homeless. She has no plan for the children, she remains unemployed. She has admitted to continued use of heroin. She is no further along to rehabilitation as a person or as a parent, than she was at the time of the children's commitment.
ADJUDICATION
With respect to the statutory grounds for termination of parental rights the court finds by clear and convincing evidence that on September 7, 1994, the children were adjudicated to be neglected to be have been uncared for. The court further finds the parents have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the children, that they could assume a responsible position in the life of these children. General Statutes § 17a-112 (c)(3)(B).
The court further finds that the children has been abandoned by the parents in the sense that the parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of their children. G.S. 17a-112
(c)(3)(A); CT Page 923
The court finds that these grounds have existed for more than one year.
Mandatory Findings:
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e):
1) The timeliness, nature and extent of services offered. The court finds that parental, psychological and substance abuse services were offered, visitation was offered and foster care was provided by DCF.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents have had enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The mother of the children was offered services but has failed to rehabilitate or achieve recovery. Father did not participate in services nor express any interest in the children, except to see the children once in a while."
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with the expectations described more fully in the social study.
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that the children are bonded to their present foster family, they consider themselves part of the family and that no presently existing emotional bonds will be broken by termination of the parents' rights. Alicia is dealing in therapy with her feelings of loss for her mother.
5) As to the age of the children. They are eleven and fourteen years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of bused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276
(1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re AlexanderV., 25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD CT Page 924 99 (1979)
6) The efforts the parents have made to adjust their circumstances or conditions. The court finds that the mother has been unsuccessful in her rehabilitative efforts. She has attempted rehabilitation but her relapses are consistent and predictable. (A)mother has maintained contact with the children periodically but not consistently nor regularly; (B) As far as is known, neither parent has had any communications with the foster parents.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the children. There was no unreasonable conduct noted by DCF.
DISPOSITION
The court finds, based upon the testimony and evidence presented, that it would be in the children's best interest to terminate the parents' rights at this time. This finding is made after considering the children's sense of time, their need for a secure and permanent environment, the relationship that the children have with their foster parents, and the totality of circumstances. In re Juvenile Appeal (Anonymous), supra,177 Conn. at 667-68. See generally, J. Goldstein, A. Freud A. Solnit;Beyond the Best Interests of the Child 99 (1979).
Based upon the foregoing findings, a termination of parental rights shall enter with respect to the mother, Connie R., and the male biological parent, Hiram R., and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for these children for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal.
Francis J. Foley, Presiding Judge Child Protection Session