MEMORANDUM OF DECISION
This case presents a petition for the termination of the CT Page 10777 parental rights of Jennie T. and James T., who are the biological parents of the minor child, Tyler H. He was born on March 14, 1996. The petitioner is the Department of Children and Families ("DCF"). Tyler was born on March 14, 1996, he was removed from his mother's care three months later and has been in foster care nearly ever since. Tyler was placed in a legal-risk foster home in January, 1998. He has happily adjusted to this home.
The parents have been served, they have actual notice of the pendency of the proceedings. While the father of the child was initially served at his place of abode in Jewett City, Ct., he came to the juvenile court on the wrong date. The court in the instant case, made constructive service upon the father and appointed counsel to act as his guardian ad litem to attempt to locate the father. The attorney appeared at court and indicated to the court the diligent efforts he unsuccessfully made to secure the father's attendance and participation in these proceedings. Counsel for the respondent mother has met her client, conferred with her and represented to the court that her client was aware of the termination proceedings scheduled for September 23, 1998. The court delayed the commencement of these proceedings to allow the mother's attorney to contact the mother by phone. The mother indicated to her attorney, as she has to the social worker, that she was willing to consent to the termination of her parental rights since she believed it to be in the child's best interest to be adopted. Neither of the biological parents attended the final hearing.
The court has jurisdiction in this matter; there is no pending action affecting custody of the child in any other court and reasonable efforts have been made to reunify this family. The mother was unable or unwilling to benefit by services offered for reunification of the mother and child. The father has not actively sought to involve himself in these proceedings, his whereabouts have been largely unknown and he has never played a parental role in the life of this child. The children's mother has appeared during the pendency of the case but on the date set for the termination trial, she failed to appear in court. She appeared in the juvenile court at various hearings with her attorney.
The court having read the verified petitions, the social studies, the various documents entered into evidence and heard the testimony of the case worker, makes the following findings by clear and convincing evidence. CT Page 10778
On July 1, 1996, the child was adjudicated to be neglected. The child has been in DCF care since June 7, 1996 when DCF invoked a 96 hour hold upon the child. The allegations made to the Careline worker were that the mother was selling her food-stamps to buy cocaine, that her parenting skills were inadequate, the child was allegedly out at all hours of the night, the child was inappropriately dressed, that the mother did not maintain a stable home and was engaged in prostitution. DCF worked with the mother for several months after the child was first removed and on July 1, 1996 the court (Riefberg, J) adjudicated the child to be neglected but allowed the child to return to the mother under six months of protective supervision. This reunification of mother and child lasted only six weeks when DCF moved to modify the placement to a commitment to the Commissioner. This occurred on August 13, 1996 (Dennis, J.) The child has been in out-of-home placement since that date.
The mother, who is presently twenty one years of age, reports that the child's father is eighteen years older than she is, that he was physically and sexually abusive to her and threw her down the steps during her pregnancy. She reportedly lived with the child's father for two years and was married for only three months when the father left. He was not at home when the child was born. Since the father and mother did not live together at the time of the birth, she gave the child her maiden name. She may still be legally married to the child's father even though she does not know where he is living. He has never had any contact with the child.
The social studies (exhibits # 1 2) detail the substance abuse, mental and criminal history of the mother and the attempts DCF made to provide services to her. No evidence was offered to rebut the claims of DCF. On Sept 18, 1996 a written Service Agreement was prepared and signed by the mother. (Exhibit # 7). More than two years have elapsed since the court placed the child in the care of the Commissioner. The mother has recently expressed a willingness to allow the child to become adopted.
The social studies (Exhibits 1 and 2) narrate in great detail the history of personal difficulties Jennie encountered in her efforts to rehabilitate herself. Other reports detail the variety of services which were offered to her individually and as a parent, to no apparent benefit. CT Page 10779
 ADJUDICATION
With respect to the statutory grounds for termination of parental rights the court finds by clear and convincing evidence that on July 1, 1996, the child was adjudicated to be neglected. The court further finds the mother has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child that she could assume a responsible position in the life of this child. General Statutes § 17a-112 (c)(3)(B).
The court further finds that the child has been abandoned by the father in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of his child. G.S. 17a-112 (c)(3)(A); and that the father has no ongoing parent child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; General Statutes Sec. 17a-112 (c)(3)(D). The court finds that these grounds have existed for more than one year.
 Mandatory Findings:
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e):
1) The timeliness, nature and extent of services offered. The court finds that parental, psychological and substance abuse services were offered, visitation was offered and foster care was provided by DCF. Service providers included, Family Preservation Services, New Milford mental Health clinic, SCADD; a detoxification program in Eastern Connecticut; as well as individual and substance abuse counseling.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents have had enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The mother of the children was offered services but has failed to rehabilitate or achieve recovery. Father did not participate in services nor express any interest in the child. CT Page 10780
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with the Service Agreement, described more fully in the social study.
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that the child is bonded to the present foster family, he considers himself part of the family and that no presently existing emotional bonds will be broken by termination of the parent's rights.
5) As to the age of the child. Then child is two and a half years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276
(1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence. . ." In re AlexanderV., 25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
6) The efforts the parents have made to adjust their circumstances or conditions. The court finds that the mother has been unsuccessful in her rehabilitative efforts. She has attempted rehabilitation. (A)Mother has maintained contact with the child periodically but not consistently nor regularly; (B) As far as is known, neither parent has had any communications with the foster parents.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the child. There was no unreasonable conduct noted by DCF. While geography did pose an obstacle when the mother moved to the eastern end of the state, DCF could have made accommodations like finding a half-way point for the scheduled visits. Neither mother or her counsel suggested or requested a more accommodating site.
 DISPOSITION
The court finds, based upon the testimony and evidence presented, that it would be in the child's best interest to CT Page 10781 terminate the parents' rights at this time. This finding is made after considering the child's sense of time, his need for a secure and permanent environment, the relationship that the child has with their foster parents, and the totality of circumstances . In re Juvenile Appeal (Anonymous), supra,177 Conn. at 667-68. See generally, J. Goldstein, A. Freud A. Solnit, Beyond the Best Interests of the Child 99 (1979).
Based upon the foregoing findings, a termination of parental rights shall enter with respect to the mother Jennie T. and the male biological parent James T. and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for this child for the purpose of securing an adoptive family. if the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal law.
Francis J. Foley, Presiding Judge Child Protection Session