MEMORANDUM OF DECISION
On October 25, 1999, the Department of Children and Families, hereafter "DCF," filed a petition for the termination of the parental rights of Terri S. and Julio A. to their daughter, Arianna S. The termination petition alleges that the biological father had abandoned his child and that he had no ongoing parent-child relationship with her. Connecticut General Statutes § 17a-112 (j)(3)(A) and (D). The petition also alleges that both parents were unable and unwilling to benefit from reunification services. Trial commenced and ended on January 25, 2001. Previously on June 2, 2000, Terri S. had consented to the termination of her parental rights and the petition had been amended to reflect her consent. The biological father attended the trial and through his counsel vigorously opposed the petition. For the reasons stated below, the court grants the petition for termination of the parental rights of Terri S. and Julio A.
From the evidence presented, the court finds the following facts:
 A. FACTS
Arianna was born on April, 1998 and is now almost three years old. At the time of her birth, her mother was twenty-two years old and her father was thirty-three. Arianna has a half sibling, Manuel, who is six years old. Arianna is the third child born to her mother. Terri's first child was born when she was seventeen.
Terri was previously married to the father of Manuel. As that relationship ended, she developed a relationship with Julio A. On May 27, 1997, Manuel was removed from his mother's care after an incident when Julio choked Terri and beat her with a plastic bat. At that point, there was a protective order put in place, prohibiting contact between the adults, although the social worker testified that they continued, despite the court order, to reside together. In late, 1997 the relationship between Julio and Terri ended and she began a relationship with another individual. There continued to be domestic violence in the home and Terri had only sporadic pre-natal care and neglected her own health before the birth of Arianna.
When Arianna was born, the hospital staff alerted DCF as Terri had not made adequate preparation to care for the child and did not have supplies in her home for an infant. Based on her past history and these facts, an order of temporary custody was entered on April 27, 1998 and Arianna was placed in foster care, where she has remained ever since. On July 29, CT Page 3580 1998, she was adjudicated neglected and committed to the care and custody of DCF. Her commitment has been extended since that time. She resides in the same foster home with her brother, Manuel. She has never been in the care of her biological father, who, for the reasons set forth below, has not had visitation with her.
1. Julio A., Arianna's biological father.
At trial, Julio argued for the first time that he had not had notice of the OTC and the neglect proceedings and that the finding that further efforts for reunification were no longer appropriate made by the court on August 18, 1999 were not valid. Based on the testimony presented at trial, the court finds this argument disingenuous. First, the court finds that Julio A. knew that Terri was bearing his child. He also knew that the child had been born, as he admitted on the stand that Terri had called him from the hospital and asked him for help. Further, DCF had the address of his family in Danbury, his last known residence. The original papers and other motions were served there. The court credits the testimony of the social worker that she spoke to an individual at that home. This person reported to her that, while Julio did not live there, he did receive mail and messages there. The court also credits the testimony that the individual who responded to DCF calls wanted to know if the call had to do with Julio's obligation to pay support, which the DCF worker denied.
Through Julio's own testimony, he verified that the Department of Social Services was also attempting to locate him in 1998. Through a court-ordered paternity test in the support proceedings, paternity was established on July 16, 1999, months before Julio denied paternity in the termination case. The court notes for the record that in 1999, the worker was able to locate an address for Julio, where he was personally served with the termination proceedings. In addition, the social worker reported that when the sheriff initially attempted to serve the termination proceedings on Julio, he denied his identity for a period of time. Julio also gave two different present addresses while on the stand, one when sworn in and a different one when asked where he resided. His explanation of the difference was not credible. While claims of improper service and lack of jurisdiction based on such claims are taken seriously by the court, the court finds that Julio had actual notice of the pendency of the earlier proceedings. The court further finds that he made no motion to reopen or set aside the findings or the entry of judgment based on his spurious claims and the court will not consider them further now.
The social worker testified that she spoke to Julio in late 1999 after the service of the termination petition. At that time, he still denied his paternity of Arianna, even though he knew of the paternity findings CT Page 3581 through DSS in the summer of 1999, which findings confirmed him as her biological father. Then, on November 17, 1999 at a court hearing, he requested visitation with Arianna, who was now approximately a year and half old. At that time he stated that he was told not to see his daughter through the court order in 1997, a completely illogical answer as Arianna had not even been born then. There is no doubt that Julio did not send cards, letters or gifts to this child, even though encouraged to do so after the November, 1999 court hearing, Also, the court finds, he avoided, as much as possible, letting anyone know his whereabouts and denied paternity of this child. He never inquired about her welfare and progress, even after requesting visitation. No visitation was provided to him as the social worker testified there were some things he needed to do prior to having access to his child.
Julio A. was evaluated during a court-ordered psychological evaluation on January 4, 2000. The evaluator, Dr. Rosado, testified at trial. He found that Julio had "significant cognitive limitations" and that the test results were consistent with mild mental retardation. He noted Julio's lack of formal schooling and the many ways in which Julio's version of events differed from the reports received from DCF. In a family evaluation report dated March 2000, he noted that "there is a naivete evident in Mr. A.'s description of some situations. This could have resulted from his intellectual limitations or a possible attempt at deception." Having heard Julio A. testify, the court finds that much of his testimony and the content of his factual reports to Dr. Rosado were attempts at deception, perhaps not too successful because of his limitations, but intentional deception, nonetheless. Dr. Rosado also did not recommend visitation with Arianna as she had never seen her biological father in her entire life. He noted: "There are significant obstacles and concerns in any attempt to develop a parent-child relationship between Mr. A. and his biological daughter, Arianna."
After the evaluation, on March 20, 2000, the DCF social worker recommended that Julio participate in services. Those services included anger management classes, individual counseling, parenting classes and a substance abuse evaluation. In addition, she indicated her willingness to meet with Julio to discuss the recommended services and his daughter's situation with him. He never responded and he has never engaged in services.
2. Arianna S.
Arianna has been in the same foster home since she was a week old. She has done well there and they have been able to meet her emotional and developmental needs. Dr. Rosado noted that:
CT Page 3582
 "Arianna related consistently and exceptionally well when observed with (the foster parents). . . . The foster parent-child session was dominated by positive interactions and abundant mutual affection. They displayed characteristics consistent with a completely positive and secure foster parent-child attachment."
Her foster mother testified at trial as to the progress this child has made. She demonstrably loves this child and she and her family would like to adopt Arianna, should she become available for adoption. Since the fall of 1999, Manuel has resided in this home as well. Arianna's foster parents are an adoption resource for her sibling as well.
 B. ADJUDICATORY TERMINATION FINDINGS
1. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts or not appropriate," Connecticut General Statutes § 17a-112 (j)(1). The court does find, from the clear and convincing evidence that reasonable reunification efforts were made by DCF after Julio A. finally indicated his interest in Arianna. DCF made recommendations as to the programs Julio needed to attend before he could have visitation with Arianna and reunite with her. The court finds from that evidence that Julio was unable and unwilling to benefit from those programs, as he never showed any interest in attending them. The court notes that DCF was prepared to offer Julio services even after a finding was made that further efforts towards reunification were not appropriate on August 18, 1999.
2. Adjudicatory findings
 (a) Abandonment
The court finds by clear and convincing evidence that Julio A. abandoned his daughter. While her father testified that this child is important to him and that he would like to be her father and care for her, he has not behaved in a manner that lends credence to his words. Any child needs more than hopes and wishes to provide daily love, care and nurturance. Indeed, the evidence of abandonment is not open to doubt and well beyond the legally required standard of proof. [The abandonment statute] "does not contemplate a sporadic showing of the indicia of CT Page 3583 interest, concern or responsibility for the welfare of a child." In reKezia M, 33 Conn. App. 12, 18, 632 A.2d 1122 (1993). "A parent must maintain a reasonable degree of interest in the welfare of his or her child. `Maintain' implies a continuing, reasonable degree of concern." (Internal quotation marks omitted.) In re Michael M., 29 Conn. App. 112,614 A.2d 832 (1992); In re Rayna M., 13 Conn. App. 23, 37-38, 534 A.2d 897
(1987); In re Migdalia M., 6 Conn. App. 194, 208-209, 504 A.2d 533, (1986). Julio A. has not exhibited any parental concern for this child and has abandoned Arianna.
(b) No Ongoing parent-child relationship.
The second ground alleged in the termination petition is that Julio A. has no ongoing parent-child relationship with Arianna. The court finds that this is so and that the lack of this relationship is entirely due to Julio's action in denying paternity of his daughter for a period of seventeen months after her birth, even though he knew this was his daughter. Further, it is due to his failure to follow any recommendations made by DCF of the steps he would need to take before he could begin to visit and potentially reunify with her. The court finds that this ground has been proven by clear and convincing evidence.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112(k).
1) Appropriate and timely services were provided by DCF to the family. These include referrals for both parents to deal with issues of substance abuse, parenting and anger management. DCF also provided visitation to Terri S. and case management services to both biological parents.
2) As previously noted, the court finds by clear and convincing evidence, reasonable reunification efforts were made by DCF and that Julio was unwilling or unable to benefit from them. The court notes that these efforts were made after the court found that further efforts were no longer appropriate when Mr. A. finally admitted Arianna was his daughter.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Terri S. None were set for Julio as he did not appear nor identify himself as Arianna's parent.
4) The feelings and emotional ties of the child with respect to the CT Page 3584 parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Arianna knows no other family other than those who have fostered her since she was seven days old. She has never met her biological father.
5) Finding regarding the age of the child: Arianna will be three years old on April, 2001. She is two years and almost eleven months old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that Julio A. has done nothing to accommodate the care and nurturing of this child.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parents. No such conduct is noted. Julio A. is the person who is responsible for his own lack of contact with his biological child.
 D. DISPOSITION
In hearing a termination of parental rights case, the court must first determine whether or not the grounds for termination have been proven by clear and convincing evidence. If so, only then may it consider what action is in the best interests of the child at issue.
 "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) In re Danuael D., 51 Conn. App. 829, 835-37, 724 A.2d 546
CT Page 3585 (1999).
The court has found that both grounds alleged for termination of the parental rights of Julio A. have been proven by clear and convincing evidence. Terri S. has consented to the termination of her parental rights. Arianna lives with the only family she has ever known and deserves to have permanency. Waiting for Julio A. to change his life when he has not demonstrated that this could happen soon, if at all, would deny her this basic right. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD), 189 Conn. 276,455 A.2d 1313 (1983). In addition, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ."In re Alexander V., 25 Conn. App. 741, 748, 596 A.2d 930
(1992). The court concludes, from the clear and convincing testimony, that it is in the best interests of Arianna that her parents' rights to her be terminated.
The court therefore orders that a termination of parental rights enter with respect to Terri S. and Julio A. Arianna's present foster family has expressed an unequivocal desire to adopt her and the court directs that they be given first consideration in any adoption, as is presently the DCF plan for this child. The court appoints the Commissioner of the Department of Children and Families as the statutory parent. The court further orders that a permanency plan for Arianna and a review plan for her be filed in accordance with state and federal law.
Barbara M. Quinn, Presiding Judge Child Protection Session