MEMORANDUM OF DECISION
On April 23, 1998, the Department of Children and Families, hereafter "DCF", filed petitions for the termination of the parental rights of Elsa M. and Genero F. to their four children, Sharnika, Jannetty, Justine and Anthony F. A trial on the petitions took place on February 8, 1999. For the reasons stated below, the court grants the petitions for termination of the parental rights of the respondent parents on the grounds of abandonment and their failure to rehabilitate themselves as parents to the four children.
The termination petitions allege that the children were previously adjudicated neglected and that their parents had failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the children, they could assume a responsible position in their lives. The remaining allegation is that the children have been denied, by reason of an act of CT Page 2321 parental commission or omission, the care, guidance or control necessary for their physical, educational, or emotional well-being. Connecticut General Statutes § 17a-112(c)(3)(B) and(C). The petitioner filed a motion to amend the petitions alleging that the parents had abandoned the children, which motion was granted, retaining the original adjudicatory date of April 23, 1998. Connecticut General Statutes § 17a-112(c)(3) (A). The respondent father filed a motion that argued the court did not have subject matter jurisdiction over the case pursuant to the Uniform Child Custody Jurisdiction Act and that the father's constitutionally protected right to travel prohibits DCF from impairing his parental rights due to his relocation to New York. This motion had earlier been argued to the court during the pendency of the terminations petitions and denied. (January 11, 1999, Munro, J.) This court declines to revisit the identical issues previously argued and not found persuasive. From the evidence presented, the court finds the following facts:
 A. FACTS
The four children, who are the subject of these petitions, are the youngest of eight children known to have been born to their mother, Elsa M. Elsa is thirty-nine years old and was born in Puerto Rico. DCF has little information about her education and employment history as she has refused to provide it. What is known is that the family had a prior history with Child Protection Services in Bronx, New York and that Elsa was a chronic substance abuser. Genero F., the biological father of these four children, has provided even less information about his background. He is forty-three years old, also a chronic substance abuser and is known by DCF to have received psychiatric treatment for a period of time at Hartford Hospital during the time he resided in Connecticut.
The family, testified the DFC social worker Mary Kent then assigned to the case, first became known to DCF in June, 1995. At that time, there was no food or furniture in the apartment and the children were not being supervised. Ms. Kent stated that she could never understand why there was no food, given the social services and financial supports provided to the family. When she investigated the family's living situation, all of the children were sleeping on one mattress with no sheets; the two youngest, who were not yet toilet trained, had no diapers and the children were scantily clothed with clothes that did not fit them and were not clean. She found that the children were very needy, wanting CT Page 2322 to be held by her, a stranger, and spoken to. She testified that it appeared that the children were on their own much of the time.
By September of 1995 the family returned to New York without any notice to DCF. DCF then closed its file after attempting to contact child protection workers in New York. But in March, 1996 DCF was contacted by school officials that the children were back in school in Connecticut and were hungry. DCF investigated the home situation and found the same extremely neglectful conditions as before. The children were removed from their parents and placed in foster care. On April 4, 1996 the order of temporary custody was granted. By June 28 1996 all the children were adjudicated neglected and committed to the care and custody of DCF. Their commitments have been extended since that date.
Expectations were set for both parents on June 28 1996 and the evidence before the court is that neither of them have made any progress in dealing with the issues which caused the removal of their children due to extreme neglect. While the record is replete with the general lack of progress, by March, 1998, the parents both again returned to the Bronx, leaving their children behind in Connecticut. Such a move clearly meant that they were unable to visit with the children as often as permitted. They had failed to attend three supervised visits in February and March, 1998. They also had no visits again until July, 1998 did not send cards or gifts or take any other steps to maintain any connection with their children. They also did not contact DCF to inquire about the children.
Prior to their move from Connecticut in 1998 although DCF made extensive referrals, most often for Elsa, but also for Genero, neither participated in counseling or provided any information to DCF about attending parenting classes. Each of the parents was to have a drug and alcohol assessment and to follow the recommendations made by such assessment.[2] As late as March 1998 Elsa tested positive for drugs at an evaluation at the Institute for Living. The parties were also obligated to maintain adequate housing and income and not engage in any substance abuse. They did not maintain adequate housing and income and the court finds that Elsa, almost two years after the expectations were entered by the court, still had a drug abuse problem. The record also reflects that in 1996, Elsa was arrested and convicted of larceny in the sixth degree and incarcerated for ninety days. The present DCF social worker, Joanne Sanitago, testified that while Elsa appeared to cooperate with DCF, most of CT Page 2323 the time nothing changed in her life, even though she did participate in programs and for periods of time would appear to make some progress. Genero did not participate to any degree.[3]
Shamika and Justine have been fortunate in their foster home placements where they have been since 1996. Shamika has been in the same foster home placement since her removal and the foster family with whom she resides wishes to adopt her, if at all possible. Shamika is well-connected to this family, who consider her a part of the family. She also enjoys sibling visits with her three siblings once a week. Justine was initially placed with Shamika, but shortly afterwards was placed with the family where she now resides. Her foster mother testified that when Justine first arrived, she disclosed that her father had touched her private part by inserting his finger into her vagina and had hurt her. She suffered from nightmares about this and was afraid her father would come to hurt her again. Her foster mother reassured her as much as possible about her safety and brought her to therapy at the Village for Families and Children. Together, the foster parents and the therapist have helped Justine to overcome her night terrors. The foster mother reported the sexual abuse to DCF and the matter was investigated and reported to the police. Both parents denied that the child had been sexually abused, and despite the police involvement, no criminal charges have been brought against Genero F. Justine also had significant speech problems when she was placed with this family. The foster mother testified that Justine was extremely difficult to understand at first. With continued speech therapy, the child has improved. Justine has become attached to her foster family and has thrived in the home. The family wishes to adopt her, if possible.
The two boys, Janetty and Anthony, have not had as easy a time in foster care as their two sisters. They have always been placed together and have been in at least seven placements, in one of which they appear to have been mistreated. Janetty has had extraordinarily difficult problems; His counselor from the Village for Families and Children testified that he has been treating Janetty since June, 1998. He stated that Janetty is depressed, has difficulties with attachment and peer relationships and that his compliance with authority is very limited. He has been working hard to stabilize the child, to keep him in foster care and manage his behaviors in school. He stated that Janetty had been making a slow adjustment, but that since the Christmas holidays, he has regressed. Janetty is receiving CT Page 2324 various medications to stabilize him The therapist also found, as he worked with the foster parents, that the child has developed a bond with them. "He talks about them as though they were his parents and often states that he does not want to be removed. He wants to be adopted." In his opinion, Janetty is beginning to feel safe with this family and is scared that he would be removed. He noted that Janetty requires a lot of supervision and structure and that it is very important for him to have a permanent home. His foster parents have been diligent in providing for his specialized needs. Janetty's therapist also stated that Janetty never talks about his biological parents. The counselor did observe the one visit that took place between the parents and the children in July, 1998, after the parents returned to the Bronx. After the visit, when questioned, Janetty refused to talk about it. The DCF social worker testified that all of the children acted out after the completion of the visit and their signs of distress led DCF to request a psychological assessment of the children's status and the feasibility of continued visitation.
Anthony, the youngest, also exhibits many of the problematic behaviors demonstrated by Janetty. He also receives counseling at the Village and his therapist has been helping to calm him down as Anthony has a very high level of anxiety. She testified that she has assisted in identifying what extra services Anthony requires in school and in making sure he receives such necessary services. She believes that progress has been made and that Anthony has exhibited more of an attachment to his foster parents, although he still has significant problems. Anthony, unlike Janetty, exhibits sexualized behaviors with other children and toys, getting on top of stuffed animals and acting out sexual play with them. He continues to receive therapy for his difficulties. Nontheless, he is attached to the foster family, who makes the same heroic efforts with this child as they do with Janetty. The foster parents are prepared to adopt both of the boys, if they become available for adoption.
 B. ADJUDICATION A. Reasonable Reunification Efforts
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that CT Page 2325 the parent is unable or unwilling to benefit from reunification efforts, . . ." Connecticut General Statutes § 17a-112(c)(1). In the pending petitions, the allegations are that the parents are unable or unwilling to benefit from reunification services. The court finds by clear and convincing evidence that both Elsa M. and Genero F. were both unwilling, and as demonstrated by their behavior, unable to benefit from reunification services both at the time the petitions were filed and continuing to the present time.
B. Adjudicatory Findings
The court finds, by clear and convincing evidence, that as of April 23, 1998, both Elsa M. and Genero F. had abandoned their children. "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal(Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801 (1981). When the children were in the care of their parents, neither parent acted as a parent should to any of them. By again moving to New York in March 1998, previously missing three supervised visits, not inquiring about their welfare or taking any other steps on behalf of their children, both Elsa and Genero abandoned them in the legal meaning of the term. While the facts supporting the ground of abandonment were not obviously in existence for a year prior to the filing of the termination petitions and DCF did not then so allege, the allegation having been added by amendment close to trial, the court finds it is in the best interests of the children that the one year requirement be waived and it is so ordered.
The court further finds, by clear and convincing evidence, that as of April 23, 1998, neither parent had achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, they could assume a responsible position in their lives. Connecticut General Statutes § 17a-112(c)(3)(B). Elsa only sporadically used the services that were offered to her, but did not benefit from them to address her drug addiction or her parenting deficits. She did not meet any of the expectations the court established for her on June 28, 1996. The court concludes that she was not rehabilitated as a parent and that giving her more time, when she has not demonstrated any increasing ability to function in a parental role, would serve no purpose. CT Page 2326
Genero was also referred to many services during the pendency of the neglect and termination proceedings. Those services included a referral to the Wheeler Clinic for a substance abuse evaluation and drug screen. He also was referred to and received psychiatric services at Hartford Hospital, which ended when he moved to New York in March, 1998. He was directed to the institute for the Hispanic Family for their parenting program and a substance abuse program. He did not comply with the requirements of either program and has not been rehabilitated. Giving him more time under the circumstances as they existed then and even now would serve no purpose.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., supra, see also; Inre Juvenile Appeal, 1 Conn. App. 463, 477, 473 A.2d 795 (1984). There is no doubt that neither Elsa nor Genero will be rehabilitated within the foreseeable future. The court finds, based on the clear and convincing evidence, this ground had existed for longer than one year prior to the filing of the termination petitions.
The termination petitions also allege that the children were denied, by reason of an act of parental commission or omission, the care, guidance or control necessary for their physical, educational, or emotional well-being. The facts relied upon were the mother's unannounced visits at the foster homes, during which time she would demand money, which visits upset the children. Also, the petitioner relies upon the allegations Justine made about the sexual abuse she suffered by her father. While the court does not doubt that the visits and calls requesting money upset the children, their depression and behavior problems could not have been caused only by this limited contact. Certainly, there was no expert testimony on this point. As to the sexual abuse Justine suffered, the court also does not doubt that this child suffered injury, but is unable to find by clear and convincing evidence that such abuse was inflicted upon her by her father, based on the evidence. The court therefore dismisses this count in the four petitions.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112(e): CT Page 2327
1) Appropriate and timely services were provided by DCF to the family. Those services include services to benefit the children, referrals for both parents to the Wheeler Clinic for substance abuse evaluation and testing, a referral for Elsa to the Institute for Living in 1998 after she tested positive for heroin, referral to the Institute for the Hispanic Family and the Hispanic Health Counsel. There were also case management services, supervised visitation and transportation coordination.
2) Despite its finding that the parents were unwilling and unable to benefit from the services offered, the court finds by clear and convincing evidence that until the time of the filing of the termination petitions, DCF made reasonable efforts to reunify the family.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for both parents on June 28, 1996 and that neither of the parents was able to even minimally fulfill them.
4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. Shamika and Justine are attached to their foster families. Neither child expresses any interest or concern about their biological parents, although the evidence reflects that their mother was appropriate with all the children during her last visit with them in July, 1998. The same holds true for the boys, Janetty and Anthony. These two children unfortunately have had multiple caretakers, but now they are connected to their present foster parents. All of the children are interested in each other and enjoy their sibling visits.
5) Finding regarding the ages of the children. Shamika just became eleven years old on February 14, 1999. Janetty will be eight years old on March 9, 1999. Justine is six years and five months old. Anthony is four years and seven months old
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parent has CT Page 2328 maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. As detailed above, the court finds that neither of the biological parents have made any changes in their lives to accommodate the care and nurturing of these four children. They have never begun to rehabilitate from the problems and failures which led to the removal of the children.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the children, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. DCF has taken steps to encourage these parents to have a meaningful relationship with the children and to rehabilitate themselves, which they have been unable to accomplish.
 D. DISPOSITION
All four children have been in foster care for almost three years. The are in need of a permanent placement. Their parents are no closer now to making the necessary personal changes to parent them than they were when the children were removed from their care in 1996. The children retain a close sibling bond and have a strong attachment to their present caretakers. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD),189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[because of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992).
Based upon the foregoing, the court finds that it is in the best interests of the children that he rights of their biological parents to them be terminated. The court orders that a termination of parental rights enter with respect to Elsa M. and Genero F. as to their four children, Shamika, Janetty, Justine and Anthony. The Commissioner of the Department of Children and Families is hereby appointed the children's statutory parent. Further the court directs that the foster parents, who have expressed a willingness to adopt these children, be given first consideration in such adoption. The court further orders that a CT Page 2329 permanency plan for the children be submitted within ninety days. A review plan for them shall be filed in accordance with state and federal law.
 Barbara M. Quinn, Judge Child Protection Session