MEMORANDUM OF DECISION
On February 13, 1998, the Department of Children and Families, hereafter "DCF", filed petitions for the termination of the parental rights of Jacqueline C. and Keon W. to Jaquanna and Jacqueline C. and Terrance C. to Terrance C., Jr. A trial on the petitions took place on February 11, 1999. For the reasons stated below, the court grants the petitions for termination of the parental rights of the respondent mother on the grounds of her failure to rehabilitate herself and as to Keon W. and Terrance D. on the grounds of abandonment.
From the evidence presented, the court finds the following facts:
 A. FACTS
Jaquanna, the oldest of the two children, was born to her mother when Jacqueline was just fourteen years old. Despite the tremendous handicap of delivery of a child while she herself was still a child, Jacqueline managed to keep the child in her care CT Page 3104 until Jaquanna was seven months old. Unfortunately, Jacqueline, who was not only young but remains cognitively challenged, did not cooperate with DCF and the offered service providers. Upon finding the child had fallen to the floor when her mother left her unattended on the bed, DCF secured an order of temporary custody on March 3, 1995. In the neglect petition then filed, DCF alleged that the mother was emotionally explosive, erratic, and lacked the necessary judgment to parent an infant. The child was placed with her maternal great grandmother where she remains to this day. Jaquanna was committed to DCF on July 13, 1995 and her commitment has been extended three times since that date. On December 3, 1996, the court found that further reunification efforts between Jaquanna and her mother and father were not appropriate.
Terrance, Jr. was born on March 12. 1996 and was removed from his mother's care when he was a few days old. At that time, Jacqueline still a Juvenile, was incarcerated at Long Lane for stabbing her mother and the child was homeless. On August 20, 1996, Terrance was adjudicated neglected. He, too, was placed with his maternal great grandmother. His commitment has been extended twice since that date. On August 20, 1997, the court found that further reunification efforts between Terrance and his mother and father were not appropriate.
Jacqueline, who stopped attending school in the ninth grade, is not married, not employed and appears to be actively involved in drug abuse. Her adult criminal record contains several drug related convictions for events occurring in 1998. At the present, she has had no contact with DCF since August 4, 1997 and fails to respond to any inquiries.[2] She does have sporadic contact with the children's caretaker and lives in the same building with her uncle, her grandmother reported. She leaves messages for her.
Jacqueline failed, at the time the children were removed, and has continued to fail to cooperate with the services to which she was referred, which included parenting, mental health services, anger management and individual counseling. The DCF social worker testified that many times when Jacqueline would begin to attend programs, only to drop out after a few sessions. Jacqueline did not believe that she required the services to which she was referred. In 1995, expectations were set for Jacqueline by the court, none of which have been met by her. On January 17, 1997, DFC entered into a service agreement with her. Again, the social worker testified that Jacqueline began and did not continue. She did not cooperate with counseling. During this time, there was CT Page 3105 also supervised visitation. "Jacqueline was excited to have it at first, but towards the end of the period, she was not interacting well with her children." She made no attempts to pick them up or comfort them during the visitation times. She never completed any of the services offered or requested any other services.
Jacqueline followed the same pattern with visitation as she had for using the services to which she was referred. Her grandmother testified that initially when Jaquanna was little, Jacqueline called regularly and visited once in a while. She also recalled that there was supervised visitation with DFC and that she brought her great grandchildren to DCF only three times in total. She stated that every now and then she still receives a telephone call from Jacqueline. She reported that Jacqueline has told her she is not worried about the children, that they are fine where they are in her grandmother's care.
Keon W. and Terrance C. have never been actively involved in the children's lives. Keon is now twenty-four years old and was nineteen when Jaquanna was born. He has not had face-to-face contact with DCF since July 13, 1996 and has not contacted DFC since his latest known release from incarceration on April 9, 1997. Keon only calls when he is in jail, Mrs. T., the children's great grandmother reported. She stated that she took the child to visit with him three times while he was incarcerated. After that, she did not take her again. Also, at times, Keon would call and wanted to have the calls transferred to his girlfriend or his mother, which she refused to do as she knew it was not proper. Keon also once requested an administrative case review regarding his daughter, the DCF social worker testified. However, when it was scheduled, he did not attend. He also did not request visits when he was not incarcerated. She testified when she contacted him and scheduled an appointment to talk about his daughter during such a time, he failed to attend. When the decision was made on 12/12/96 that reunification efforts were no longer appropriate, she made no further efforts to facilitate visitation between either parent and Jaquanna
Terrance C. was seventeen when Terrance Jr. was born. Throughout the pendency of the petition for neglect and termination, he has had doubts about Terrance's paternity. Nonetheless. with testing finally completed, Terrance C. acknowledged his paternity at trial. His personal history, as much as is known, also id not promising. He did not complete high school and has only sporadically been employed. He, too, has been CT Page 3106 incarcerated from time to time during the pending proceedings. His last contact with DCF was on April 22. 1996. The children's great grandmother testified that he has mentioned to her that he would love to see the children when he is released from incarceration. She testified that he wrote a few letters for Christmas and his birthday and Thanksgiving and sent some pictures. Mrs. T. indicated that she wrote to him to tell I him to call, but he never did. The social worker testified that Terrance did not contact DCF, ask for visits, send gifts or funds for the child. As late as June. 1997, he was still questioning his paternity. She stated that Terrance had no realistic plan for the child, but wanted his mother to care for him.
 B. ADJUDICATION A. Reasonable Reunification Efforts
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, . . . . provided that such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes § 17a-112
(c)(1). As previously indicated, the court has made this finding for both children. Counsel for Terrance argued that DCF made no real effort with him and that he fell through the cracks of the system. Primarily this argument relates to the few efforts made by DCF to contact him in 1996 while he was incarcerated. But Terrance also had to make an effort to let DCF know he was interested, which he did not do. While it is undoubtedly difficult to establish a relationship with an infant while incarcerated, Terrance could have done more. DCF is not required to make needless efforts where parents do not, at a minimum, indicate their commitment and interest. Such interest as Terrance has shown has always been ambivalent at best.
 B. Adjudicatory Findings
The court finds, by clear and convincing evidence, that as of February 13, 1998, both Keon W. and Terrance C. had abandoned their children. "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal(Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801 (1981). Neither father CT Page 3107 was ever involved with these children, and while their repeated incarcerations would have made continued contact difficult, neither took such steps to maintain such contact as was available to them. The court concludes that as to both of these absent fathers, DCF did make reasonable efforts to contact them and determine the level of their interest in the children. The facts supporting abandonment have also been in existence as to both biological fathers for over a year when the petitions were filed. Since Terrance Jr. was removed from his mother's care almost at birth the court dismisses the ground of no ongoing parent-child relationship between Terrance and his biological father.
The court further finds, by clear and convincing evidence, that as of February 13, 1998 that Jacqueline had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in their lives. Connecticut General Statutes § 17a-112 (c)(3)(B). She only sporadically used the services that were offered to her, but did not benefit from them to address her drug addiction or her parenting deficits. She did not meet any of the expectations the court established for her. The court concludes that she was not rehabilitated as a parent and that giving her more time, when she has not demonstrated any increasing ability to function in a parental role, would serve no purpose.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194,203, 504 A.2d 532 (1986), see also; In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795 (1984). Jacqueline will not be rehabilitated within the foreseeable future. The court finds, based on the clear and convincing evidence, this ground had existed for longer than one year prior to the filing of the termination petitions.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112 (e):
1) Appropriate and timely services were provided by DCF to the family. Those services include services to benefit the children, case management services, supervised visitation and transportation coordination. For the biological fathers, there CT Page 3108 were offers of visits and administrative case reviews, but neither acted upon these offers. For Jacqueline, there were also referrals for mental health services, parenting education and counseling in which she did not participate nor complete.
2) Despite its finding that the court has determined at a prior hearing that further reunification efforts are no longer appropriate, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family under all the circumstances prior to the entry of the court orders ending such efforts.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Jacqueline as well as a service agreement. She was not able to even minimally fulfill them. None were set for the biological fathers due to their lack of involvement in the childrens' lives.
4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. Jaquanna and Terrance are doing, well with their great grandmother. They have known no other nurturing home and have lived there most of their short lives. Neither child expresses any interest or concern about their biological parents. Their great grandmother, with whom their two maternal cousins also reside, wishes to adopt them.
5) Finding regarding the ages of the children. Jaquanna is five and Terrance will be three on March 12, 1999.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parent has maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. As detailed above, the court finds that none of the biological parents have made any changes in their lives to CT Page 3109 accommodate the care and nurturing of these two children.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the children, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. While Jacqueline faced a significant hurdle to be able to parent at fourteen, DCF also took steps to encourage and help her, which help she refused. The fathers of the children were not present and willing to help in the care of the children.
 D. DISPOSITION
The children have been in the care of their great grandmother all of their lives. They are in need of a permanent placement. Their parents are no closer now to making the necessary personal changes to parent them than they were when the children were removed from the care of their mother. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD),189 Conn. 276, 455 A.2d 1313 (1983). In addition, "because of the psychological effects of prolonged termination proceedings on young children, time is of the essence." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992).
Based upon the foregoing, the court finds that it is in the best interests of the children that the rights of their biological parents to them be terminated. The court orders that a termination of parental rights enter with respect to Jacqueline C., Keon W. and Terrance C. The Commissioner of the Department of Children and Families is hereby appointed the children's statutory parent. Further the court directs that the foster parent, who have expressed a willingness to adopt these children, be given first consideration in such adoption. The court further orders that a permanency plan for the children be submitted within ninety days. A review plan for them shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session