MEMORANDUM OF DECISION
CT Page 7203
On March 30, 1998, the Department of Children and Families, hereafter "DCF", filed a petition for the termination of the parental rights of Theresa M. and Carmen Fred M. to their son, Carmen Joseph M. A trial on the petition took place on June 9, 1999. For the reasons stated below, the court grants the petition for termination of the parental rights of the respondent mother based on her consent and the parental rights of Carmen Fred M. on the grounds of his failure to rehabilitate himself and for the lack of an ongoing parent-child relationship with his son.
Theresa M. consented to the termination of her parental rights on September 18, 1998. The court accepted her consent, having found it to have been knowingly and voluntarily made with the advice and assistance of competent counsel. (Brenneman, J.) The petition was amended to reflect her consent.
From the evidence presented, the court finds the following facts:
 A. FACTS
Carmen was first removed from his parents in November of 1994, when he was four years old, by order of the probate court on application of his paternal grandparents. His mother had ongoing psychiatric difficulties and substance abuse problems. His father was employed as a long- haul truck driver and was often not home for considerable periods of time. He was not available to protect his son. Because of relationship problems the grandparents had, a year and half after his removal from his parents, Carmen's custody was transferred to his great aunt and uncle. This relationship was also not stable and did not continue. The probate court granted custody to the Department of Children and Families on January 2, 1996. A neglect petition was filed on June 5, 1996 and by October 22, 1997, Carmen was adjudicated an uncared-for child. Shortly after Carmen's placement in foster care, he disclosed sexual abuse by his mother. The sexual abuse was confirmed by an evaluation at the Yale Sexual Abuse Clinic and also by statements concerning inappropriate behavior the grandmother had witnessed. Theresa, the mother, was subsequently arrested on charges of risk of injury, was convicted of those charges and is presently serving her sentence. CT Page 7204
At the time of the filing of the neglect petition in 1996, DCF's claims against Carmen's father were that he had no permanent residence and was not able to care for the child. Later, when the sexual abuse was disclosed by the child, DCF became concerned that Carmen's father did not believe the statements his son made or that any abuse had occurred. Because of his disbelief and lack of understanding, DCF believed that he could not properly care for or protect his son. Carmen Fred M., the father, testified at trial that even now, all these years later, could not bring himself to unequivocally acknowledge that the abuse had taken place. While he did not discount the statements made by the child and the evaluators, he also believed his former wife's denial to him of these events. The court concludes from his testimony that Mr. M. does not believe the abuse took place. The court therefore finds from the clear and convincing evidence that one of DCF's claims against him, that is of his failure to be able to protect the child, has been amply demonstrated.
In the termination petition, DCF alleges that Carmen Fred M., the father of a child previously adjudicated uncared-for, has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in his son's life. Connecticut General Statutes § 17a-112(c)(3)(B). There is no claim that the father has taken any overt action to harm his son; instead his failures are failures to take action for the best interests of his child at various pivotal points in the child's life.
There were several service agreements and court-ordered expectations which set forth the steps Carmen Fred M. needed to take in order for his son to be returned to him. As testified to by the DCF social worker who was in charge of the case from January of 1997 to September of 1998, the main issue was Mr. M.'s failure to understand his child's victimizations and his specialized needs. He was to secure individualized counseling to help him to understand what he needed to do for his son. He only went to four counseling sessions and had no motivation to work on those issues. When he and his former wife were still together through 1997 and early 1998. they were offered family and couple's counseling, which he did not attend. Also there was a referral to parenting classes, which Mr. M. did not attend. The court concludes from the evidence that he did not comply with the expectations and has not to this day fulfilled them. His own CT Page 7205 testimony demonstrates his lack of understanding of his son's needs for support and empathy about the abuse he suffered at the hands of his mother.
Young Carmen was a seriously emotionally and behaviorally disordered child when he came into foster care in the opinion of David Mantell, the court appointed psychologist evaluator. He had experienced multiple disrupted placements with his relatives and could not learn at school. "His father," he stated, "was only a visitor in his life and held out the promise of reconciliation which was not fulfilled." The child lacked appropriate impulse control, he was hyperactive and had Attention Deficit Hyperactivity Disorder (ADHD). After a period of time, the child was placed on medication which helped him to be able to learn at school, focus and remember.
Even the child's need for medication was something his father could not accept. During a supervised visitation session, he spoke to his child about not taking the medication and being "drugged." That his child needed and benefited from the medication was apparently not a concern of his father's. He made no attempt to learn and understand Carmen's specialized needs and the extent of the difficulties he had to overcome to continue to function. The court concludes from his testimony that he does not understand them to this day.
What is particularly sad about Mr. M.'s failures to take action and to make the changes necessary to re-order his life is that formerly he and his son enjoyed a good and close relationship. At one time he was an important figure in his son's life, but unfortunately through Mr. M.'s inaction, that connection has been lost. Dr. Mantell spoke of the child's despair during evaluations in 1996 and 1997 that his father would ever get his life together so that he could provide care for him. He notes that even today, Carmen enjoys seeing his father
Fortunately, Carmen has been welcomed into a foster family where both foster parents are actively engaged with the child and support him in all areas of his life. He has formed a close bond with them and they have become his psychological parents. Through their efforts and those of the child's counselor, Iris Slotkin, Carmen has progressed in school. He no longer requires special education services, which he received in 1996 when he was placed with his foster parents. He now is able to participate in school in a regular classroom, a singular achievement for this troubled CT Page 7206 child.
His therapist testified that he is a survivor. He does not dwell on the problems of the past and has always been reticent to speak of such issues with her. Initially in 1996, he saw Ms. Slotkin for weekly sessions. She stated that at that time he was "understandably a sad and confused child, who was not functioning very well in school. He was guarded and noncommunicative and sometimes aggressive and destructive." Now, she stated, he is a cheerful and outgoing child who is doing well. She attributes his progress to many factors, but believes that "the overriding factor has been that he is in an extremely nurturing foster home." Also he receives medication which he requires and has a school that is sensitive to his needs. "He receives a lot of support in general," she stated.
She stated that Carmen knows and loves his father, but that he identifies with his foster parents and wants to continue to live with them. He looks upon them as his primary caretakers. Her recommendation was that he remain with the foster parents. In her opinion, a termination of parental rights was in the child's best interests as he is in a foster home where he has received excellent care and is truly loved and cherished. She stated, "It is important for him to feel that he is a part of this family and he has been fortunate with this family." The court-appointed evaluator concurred with this opinion. David Mantell stated "the handwriting has been on the wall for a long time. The father did not do the most elementary things to care for his child, beginning with changing his job." He believed that the child needs a stable permanent home so that he knows where he belongs. He stated that "his foster parents are his sustaining parent figures." In his opinion, it is important for Carmen that this relationship be secure and not "challenged by old relationships or legal proceedings." He did not believe that giving the father more time for rehabilitation would serve any purpose.
Carmen does, as stated, have a good and positive memory of his father. He enjoys his visits with him. Nonetheless, those who observe the two conclude that it is more a visiting and friend relationship than a parent-child relationship. It is not as close as would be expected in closer familial circumstances. The evaluator, David Mantell, concluded of the parent child interaction that he witnessed: "(T)he father presents as a passive, dependent and emotionally rigid person with little insight and without the capacity to satisfactorily generate a CT Page 7207 home for himself and his child."[2]
 B. ADJUDICATION A. Reasonable Reunification Efforts
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." Connecticut General Statutes §17a-112(c)(1). The court concludes that DCF made I such efforts with Mr. M., who failed to take advantage of those services offered to him or to complete any of them. Indeed, the court finds from the clear and convincing evidence, he did and does not understand the need for such services.
B. Adjudicatory Findings
The court finds, by clear and convincing evidence, that as of the date of the filing of the termination petition March 30, 1998, Carmen Fred M. was not rehabilitated as a parent and that giving him more time, when he has demonstrated only slow and minimal improvement would not be in his son's best interests. The court finds that Carmen Fred M. cannot and did not rehabilitate within a reasonable period of time, given the age and needs of his child.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194,203, 504 A.2d 532 (1986), see also; In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795 (1984). From the evidence, the court finds that Mr. M. will not be rehabilitated within the foreseeable future. The court finds, based on the clear and convincing evidence, this ground had existed for longer than one year prior to the filing of the termination petition.
The second ground alleged is that there is no ongoing parent-child relationship. "The question is whether they [the facts] substantiate a finding by clear and convincing evidence that no relationship ever existed between the parent and child, or that the relationship has terminated, without any future hope for its establishment or reestablishment." In re Migdalia M.,6 Conn. App. 194, 211, 504 A.2d 532 (1986); In re Juvenile Appeal(84-3), 1 Conn. App. 463, 473 A.2d 795, cert. denied, CT Page 7208193 Conn. 802, 474 A.2d 1259 (1984); In re Juvenile Appeal (Anonymous),177 Conn. 648, 670-671, 420 A.2d 875 (1979). Both the court-appointed evaluator and the DCF social worker concluded that there was no such relationship remaining between Mr. M. and his son. While Carmen Fred M. has visited with his son, he has not made the personal changes necessary to re-establish and maintain the close relationship that once existed and has now been displaced.
While the argument has been advanced that supervised visitation makes a closer relationship between father and son difficult, the court concludes that the failure of the relationship connects primarily in Mr. M.'s inability to acquire adequate insight to be able to relate and to interact openly with his child. From the facts, the court concludes that there is no reasonable likelihood that Mr. M. would do so at some point in the future. The court finds that this ground had also existed for a period of time greater than one year prior to the filing of the termination petitions in March 30, 1998.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112(e) as to the father, Carmen Fred M. None are made for Theresa M. due to her consent to the termination of parental rights.
1) Appropriate and timely services were provided by DCF to the family. Those services include services to benefit the child, case management services, referrals for counseling which Carmen Fred M. did not utilize.
2) The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family under all the circumstances.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations as well as service agreements were set for the father. He was not able to even minimally fulfill them.
4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant CT Page 7209 emotional ties. Carmen Joseph M. has flourished in foster care. He wishes to stay with his foster parents indefinitely.
5) Finding regarding the age of the child. Carmen is now ten years old. He has been out of the care of his parents since he was four.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parent has maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. As detailed above, the court finds that Carmen Fred M. has not made enough changes in his life nor made them soon enough to be able to care for his son.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the children, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. The father has failed to take steps to learn how to care for his son's specialized needs and to provide him the emotional support he requires.
 D. DISPOSITION
Once the court finds that the allegations of the termination petition have been proven by clear and convincing evidence, the court in the second or dispositional phase of the proceedings must also find that termination is in a child's best interests. In re Roshawn R., 51 Conn. App. 44, 52, 720 A.2d 1112 (1998). Carmen has been out of his father's care for a very long time, more than five years. The court finds that he is in need of a permanent placement, a placement which assures the continuity and consistency of his care and permits him to maintain the sense of security he has developed with his foster parents. Both his therapist and the court-appointed evaluator concluded that a termination of parental rights is in his best interests. The court concurs, based on the clear and convincing evidence. CT Page 7210
The respondent father argues and the court acknowledges that his son enjoys spending time with him. He asks why should the connection be broken when he could care for his son? Given Carmen's specialized care needs, the court has found that his father is not capable of providing the proper care his son needs, with or without the help of his relatives. He is no closer now to making the necessary personal changes to parent him than he was when Carmen came into DCF's care. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD),189 Conn. 276, 455 A.2d 1313 (1983). In addition, "because of the psychological effects of prolonged termination proceedings on young children, time is of the essence." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992).
Nonetheless, because he is ten years old, the evaluator notes "Carmen is of an age and with a memory of life and visitation with the biological family that makes it advisable for future visitation to be considered."[3] All observers note that he enjoys spending time with his father.
Based upon the foregoing, the court finds that it is in the best interests of Carmen that the rights of his parents to him be terminated. The court orders that a termination of parental rights enter with respect to Theresa M. and Carmen Fred M. The Commissioner of the Department of Children and Families is hereby appointed the child's statutory parent. The court further directs, given the DCF plan and the evidence, that the foster parents with whom Carmen resides be given first choice to adopt this child, whom they cherish. In addition, the court directs that they be given a copy of the court's memorandum of decision. The court further directs that while Carmen is still in DCF care and consistent with the opinion of his therapist, and his own choice, he be permitted contact with his father. The court further requests that the foster parents, if they become the adoptive parents, consider carefully some arrangement for further contact, if and when Carmen should request it, since such contact is in this child's best interests, given his age and experience. The court acknowledges that upon completion of the adoption, such decision is in the adoptive parents' sole discretion, and the court's comments are to be viewed as suggestions only.
The court further orders that a permanency plan for Carmen be submitted within ninety days. A review plan for him shall be filed in accordance with state and federal law. CT Page 7211
Barbara M. Quinn, Judge, Child Protection Session