MEMORANDUM OF DECISION
On January 8, 1997, the Department of Children and Families, hereafter "DCF", filed a petition for the termination of the parental rights of Aminah M. and Joseph N. to the youngest of their four children, Hassan N., then eight years old. A trial on the petition took place on July 27 and 28, 1999. For the reasons stated below, the court grants the petition for termination of the parental rights of the respondent parents on the grounds of abandonment, their failure to rehabilitate themselves as parents of this child and because there is no longer any remaining, ongoing parent-child relationship. CT Page 12347
The termination petition alleges that Hassan was abandoned by his parents, that he was previously adjudicated neglected and that his parents had failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of this child, they could assume a responsible position in his life. The remaining allegation is that there is no ongoing parent-child relationship and to allow further time for the
development of such a relationship would be detrimental to the best interests of the child. Connecticut General Statutes §17a-112 (c)(3)(A), (B)and(D). From the evidence presented, the court finds the following facts:
 A. FACTS 1. Aminah M., the mother.
Hassan, the child who is the subject of these petitions, is the youngest of eight children known to have been born to his mother, Aminah M., who is now forty-five. The family had been involved with DCF for many years predating Hassan's birth. His mother, Anunah, has significant ongoing mental health problems which have caused her to refuse any services, including mental health services as well as to fail to participate in the court process. While an attorney was appointed to represent her earlier in the proceedings, counsel has since been permitted to withdraw and Aminah did not attend the termination trial. She and Hassan's father are divorced and DCF does not know her current whereabouts. Joseph N., the father, testified that she is regularly at his home to visit with her son, his step-son, while Joseph is at work. He stated that she had received actual notice of the court proceedings.
The evidence is unequivocal that since Hassan's placement in 1991, when he was three years old, Aminah has been completely absent from his life. She has expressed no interest in him, made no inquiries about him, sent no cards or gifts and paid no support. In the eight years since Hassan came into foster care, she has seen him a total of three times; once in 1992, once in December, 1995 when she attended a church service where Hassan was also in attendance and once in 1996. The court concludes from the uncontradicted, clear and convincing testimony that she has abandoned him and has no ongoing parent-child relationship with CT Page 12348 him. While Hassan knows that he has a biological mother who is different from his foster mother, he has no memories of her and never speaks of his mother.
Aminah suffers from ongoing and significant mental health difficulties diagnosed in the past as Paranoid Delusional Disorder. Her psychiatric history dates back to at least 1975. She was hospitalized in 1987 at the Greater Bridgeport Mental Health Center and also at Fairfield Hills. She was hospitalized three times at Norwich Hospital and as noted in the records of her last hospitalization at Norwich Hospital in 1994: "She refuses all psychiatric treatment and does not acknowledge her mental illness." While medication has been prescribed for her in the past, apparently she refused to take it regularly or to engage in any supportive services, once mentally
By 1991, she had separated from Joseph N., and was unable to care for her children, due to her illness. When Hassan was hit by a car after being on the streets in Manchester unattended at age three, his mother refused to permit him to receive treatment. DCF then invoked a ninety six six hour hold and shortly thereafter, an order of temporary custody was entered. When her four youngest children, whose father is Joseph N., were placed into foster care in 1991, no expectations were set for her as she would not enter into such expectations. She did not engage with DCF and made no attempts to deal with the issues resulting in the removal of her children.
The court concludes, from the clear and convincing evidence, that Aminah M. has not rehabilitated herself or dealt in any way with her mental health issues. The court further concludes that there is no likelihood that she would be able to care for Hassan in the reasonably foreseeable future. The evidence also demonstrated that the facts concerning all three grounds for termination of her parental rights have been in existence for well more than one year prior to the filing of the termination petition.
2. Joseph N., the father.
While the father has exhibited more interest in Hassan than Aminah, the result for the child has been the same. While Mr. N. claims that he visited Hassan and the three older children once a month beginning in 1992 through 1995, and somewhat more frequently thereafter, the court credits the testimony of the DFC CT Page 12349 workers regarding visitation and finds such visitation was minimal, at best. The record reflects there were no visits by him between 1991 and 1994. His son during that time grew from a three-year-old little boy to a six-year-old. Then there were four visits in 1995, six in 1996 and at least one in 1997 and some visits more recently. DFC offered Mr. N. weekly visitation and bus passes to see his children, opportunities he did not take to maintain whatever relationship he once had with them. He did not call to ask about Hassan, he did not send cards, letters or gifts and he has not supported this child. Even though Hassan knows Mr. N. is his father and enjoys visiting with him, there is no ongoing parent-child relationship, Dr. Berkowitz, the court appointed evaluator, noted.
Mr. N. testified on his own behalf. From that testimony, the court concludes that he loves this child and believes that he has done the best he could under the circumstances. He also demonstrated that, in his view, his role within the family is that of breadwinner. The job of nurturing and attending to children belongs to others, notably his former wife and other female members of his family. He expressed no understanding of his child's needs for nurturing, for frequent contact with him nor any understanding of his developmental or educational needs. His response upon being questioned about this was to state that he would do what was best for his son and everything that he was told to do.
The court concludes from the clear and convincing evidence that Mr. N. has abandoned his child, in the legal sense of the word. Despite Mr. N.'s protestations to the contrary, his actions over the past eight years show that he has abandoned Hassan. The same facts also demonstrate, by clear and convincing evidence that there is no ongoing parent-child relationship between them, although there is a visiting relationship. The two types of relationships are vastly different and the fact that Hassan enjoys visiting with his father, without more, is not enough to overcome the many years that Mr. N. has not acted as a concerned and involved parent to this
Mr. N., unlike his former wife, did attend court hearings and administrative case reviews for the children. Expectations were set for him. As previously detailed, he failed to visit the child as often as permitted. He attended one parenting class and when requested to do more, he refused. He was to participate in the counseling with Hassan and the older children. He attended two CT Page 12350 sessions and would not attend more, claiming that this was enough. By the content of his own testimony, he demonstrated that he has made no or inadequate progress concerning his understanding of parenting and what would be required to parent his son.
The court concludes, from the clear and convincing evidence that he has failed to rehabilitate as a parent so that he could assume the care of the child in the reasonably foreseeable future, given the age and needs of the child.
3. Hassan N., the child.
Hassan is now eleven years old and, for most of his life, has resided with the same foster mother with whom his older siblings were placed. He has done well there and was evaluated along with some of his siblings and his father by the court-appointed evaluator, Barbara P. Berkowitz on October 15, 1998. At that time, Dr. Berkowitz found that Hassan "seemed to have no relationship with either parent and little emotional attachment."[2] She also noted that this child:
 "anxiously wishes to belong to someone and perceives his foster mother and her extended family as the best chance he has for permanency. Although this is practically the only family Hassan had known, there is some concern about his perception that physical discipline is acceptable, that yelling must be tolerated and there is little affection available to him (Mrs. H., the foster mother) has relinquished care of Yusuf and Tahiyah, due to their behavior. Having seen this occur with two of his sibling, Hassan has some fears about whether or not he will be `kept.'" (italics in original).
Dr. Berkowitz also noted that Hassan has some probable ADHD problems which prevent him from performing as well as he could in school and that a through evaluation of these issues should be completed to permit him to perform to his potential. She also recommended counseling and attachment work to assist him in learning to relate to others.
 B. ADJUDICATION A. Reasonable Reunification Efforts
In order to terminate parental rights, DCF must initially CT Page 12351 show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes § 17a-112 (c)(1). Such findings were made by the court on July 15, 1996 and on June 11, 1998. The court does find, from the clear and convincing evidence, that reasonable reunification efforts had been made prior to the date of the first such finding on July 15, 1996.
B. Adjudicatory Findings
The court finds, by clear and convincing evidence, that as of January 8, 1997, both of the parents, Aminah M. and Joseph N. had abandoned their children. "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re JuvenileAppeal (Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801 (1981). Such grounds had existed for more than one year prior to the filing of the termination petition.
The court further finds, by clear and convincing evidence, that as of January 8, 1997, neither parent had achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, they could assume a responsible position in their lives. Connecticut General Statutes § 17a-112 (c)(3)(B). "`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194,203, 504 A.2d 532 (1986), see also; In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795 (1984). Neither Joseph nor Aminah will be rehabilitated within the foreseeable future. The court finds, based on the clear and convincing evidence, this ground had existed for longer than one year prior to the filing of the termination petitions.
The termination petition also alleges that there is no ongoing parent-child relationship and to allow further time for the development of such a relationship would be detrimental to the best interests of the child. Connecticut General Statutes § 17a-112 (c)(3)(D). The court so concludes from the clear CT Page 12352 and convincing evidence and the failure of these parents to maintain adequate contact with this child. As with the other grounds, this ground has existed for more than one year. prior to the filing of the termination petition.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112 (e):
1) Appropriate and timely services were provided by DCF to the family. Those services include services to benefit the child, referrals for Aminah to address her mental health issues, referrals for Joseph for parenting and counseling, as well as visitation and transportation assistance and case management services.
2) As previously noted, the court finds by clear and convincing evidence that until the time of the finding that no further efforts were required on June 15, 1996, DCF made reasonable efforts to reunify the family.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Joseph and he was not able to even minimally fulfill them. As to Aminah, her willingness to receive services was never present.
4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. As noted by Dr. Berkowitz, Hassan only knows his foster family as his family and his foster mother is his psychological parent. He has no attachment to his biological parents. He wishes to remain in his placement.
5) Finding regarding the age of the child. Hassan turned eleven years old on September 8, 1999.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parent has CT Page 12353 maintained contact with the child as part of an effort to reunite the child with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that neither of the biological parents have made any changes in their lives to accommodate the care and nurturing of this child. They have never begun to rehabilitate from the problems and failure which led to the removal of their children, including Hassan.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. DCF has taken steps to encourage these parents to have a meaningful relationship with the child and to rehabilitate themselves, which they have been unable to accomplish.
 D. DISPOSITION
Hassan has been in foster care since 1991, a tremendously long time for any child to wait for permanency. The reasons for such a long delay in securing permanency for him remain unexplained, but the lack of permanency has already impacted his emotional development. He is in desperate need of a permanent placement. His parents are no closer now to making the necessary personal changes to parent him than they were when he was removed from their care in 1991. Hassan has a strong attachment to his foster mother. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In reJuvenile Appeal (84-CD), 189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[because of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V., 25 Conn. App. 741, 748,596 A.2d 930 (1992).
Based upon the foregoing, the court finds that it is in the best interests of Hassan that the rights of his biological parents to him be terminated. The court orders that a termination of parental rights enter with respect to Aminah M. and Joseph N. as to Hassan. The Commissioner of the Department of Children and Families is hereby appointed the child's statutory parent. Further the court directs that the foster mother, who has CT Page 12354 expressed a willingness to adopt Hassan, be given first consideration in such adoption. The court further orders that a permanency plan for him be submitted within ninety days. A review plan for him shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session