MEMORANDUM OF DECISION
On January 22, 1999, the Department of Children and Families, hereafter "DCF", filed a petition for the termination of the parental rights of Susana G. and Larry V. to their son, Daniel V., then five years old. Daniel had been removed from his mother's care in September, 1997 when she was about to be evicted from her apartment, she had no food for the child and she admitted her regular use of heroin. His father was also not able to care for him. A trial on the petition against the parents proceeded on October 25, 1999, which neither parent attended. For CT Page 14376 the reasons stated below, the court grants the petition for termination of the parental rights of the respondent parents on the grounds of abandonment, their failure to rehabilitate themselves as parents of this child and because there is no ongoing parent-child relationship between the child and the father.
The termination petition alleges the above three grounds for termination of the parental rights of Susana G. and Larry V. Connecticut General Statutes § 17a-112 (c)(3)(A), (B) and (D). At trial, the ground of no ongoing parent-child relationship was withdrawn as to the mother.
From the evidence presented, the court finds the following facts:
 A. FACTS 1. Susana G., the mother.
Daniel is one of four children born to his mother. She has also lost custody of the other three children, who are in the care of relatives. She has a history of substance abuse, beginning when she was seventeen years old. Since that time, she has received numerous substance abuse treatment services, but has been unable to maintain a sober life. She is now twenty-four years old and reportedly living in Florida. She visited Daniel sporadically since he was removed from her care, but she stopped visiting in June, 1999 and has had no contact with her son, DCF or her counsel since that time.
The court finds, from the evidence, that Susana has not complied with the court expectations set for her. Daniel was adjudicated a neglected child and committed to DCF on January 30, 1998. His commitment has been extended once since that time. During the time of his commitment, Susana has not followed through with the services DCF attempted to provide to her. Those services include a referral to Catholic Family Services for a substance abuse evaluation and to the New Britain General Hospital substance abuse program, which she did not complete. She was next referred to the impatient treatment program Hogar Crea. She refused this program as she was unwilling to make the two year commitment the program required. She entered the Blue Hills Hospital inpatient detox program in October, 1997, but was discharged five weeks later for violating program rules. Next, CT Page 14377 she was referred to the Wheeler Life Line Program, but failed to attend her appointments there. In March, 1998 she started the Hartford Dispensary methadone maintenance program, but was also discharged for not attending and for tests showing the presence of illegal drugs in her system. The DCF social worker on the case testified that in June, 1999, when she last had contact with Susana, she spoke to her about another assessment, so that drug treatment services could be provided to her. Susana did not accept these services and left the State of Connecticut. The court concludes, from the clear and convincing evidence, that Susana G. has not been able to deal with the issues for substance abuse which led to the removal of Daniel from her care.
Susana visited Daniel regularly from the time of his removal until June, 1998, when she stopped visiting him completely. Her whereabouts were unknown until November, 1998 and in January, 1999, she again began to visit with Daniel. Those visits ceased when she left Connecticut in June, 1999. Since that time, she has not contacted DCF nor inquired about this child's welfare. She did not sent any cards or gifts to him. She has never supported him.
The court concludes, from the clear and convincing evidence, that Susana has abandoned this child and that she has not rehabilitated herself or dealt in any way with her substance abuse issues. The court further concludes that there is no likelihood that she would be able to care for Daniel in the reasonably foreseeable future.
2. Larry V., the father.
Larry V. has exhibited even less interest in Daniel than the child's mother. He has fathered three other children by three other women. He was not present in Susana's life when the child was born and has not visited him. He saw the child twice for visits in January and February, 1998. Except for those two visits, he has not had any contact with Daniel. He has not complied with the court expectations set for him nor is he in counseling to address parenting or substance abuse issues. He has not sent cards, gifts or letters nor inquired about the child. He never supported the child. He has never developed a relationship with Daniel. He has been unable to maintain any regular housing and support himself, let alone this child.
The court concludes from the clear and convincing evidence CT Page 14378 that Mr. V. has abandoned his child. The same facts also demonstrate, by clear and convincing evidence that there is no ongoing parent-child relationship between them. Mr. V. has also failed to rehabilitate as a parent so that he could assume the care of the child in the reasonably foreseeable future, given the age and needs of the child. He has never attended parenting classes or dealt with substance abuse issues in his life. He has failed to comply with any of the specific steps set for him by the court.
3. Daniel V., the child.
Daniel is now six years old. He is in his second foster care placement. His first placement ended because of adjustment difficulties. Since he has been placed in his present home, he has done well. He is close to his foster mother and bonded to her. Unfortunately, she is not able to adopt him and DCF's plan for Daniel is to seek a pre-adoptive permanent family for him and to secure his adoption.
 B. ADJUDICATION A. Reasonable Reunification Efforts
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." Connecticut General Statutes § 17a-112
(c)(1). The court does find, from the clear and convincing evidence, that reasonable reunification efforts were made with the mother, as previously detailed. The court finds that reasonable efforts were also made with Larry V., but were hampered by his lack of participation and cooperation with DCF. In his case, the court concludes further that Larry V. was unwilling to benefit from reunification efforts, as alleged by DCF.
B. Adjudicatory Findings
The court has previously found, by clear and convincing evidence, that as of January 22, 1999, both of the parents had abandoned Daniel. "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal (DocketCT Page 14379No. 9489), 183 Conn. 11, 14, 438 A.2d 801 (1981).
Daniel V. was adjudicated a neglected child on January 30, 1998. The court further finds, by clear and convincing evidence, that as of January 22, 1999, neither parent had achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in his life. Connecticut General Statutes § 17a-112 (c)(3)(B). "`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532
(1986), see also; In re Juvenile Appeal, 1 Conn. App. 463, 477,473 A.2d 795 (1984). Neither Susana nor Larry will be rehabilitated within the foreseeable future.
The termination petition also alleges that there is no ongoing parent-child relationship between Daniel and his father and to allow further time for the development of such a relationship would be detrimental to the best interests of the child. Connecticut General Statutes § 17a-112 (c)(3)(D). The court so concludes from the clear and convincing evidence.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112 (e):
1) Appropriate and timely services were provided by DCF to the family. Those services include services to benefit the child, referrals for Susana to address her substance abuse issue. While DCF planned to refer Larry for parenting education and counseling, he never made himself available. DCF also provided visitation and transportation assistance and case management services to both parents.
2) As previously noted, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family and that Larry V. was unwilling to benefit from such services.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for both Susana and Larry and neither CT Page 14380 parent was able to even minimally fulfill them.
4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Daniel has had some connection to his mother, but none to his father. He is close to his present foster mother.
5) Finding regarding the age of the child. Daniel turned six on August 21, 1999.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that neither of the biological parents have made any changes in their lives to accommodate the care and nurturing of this child. They have never begun to rehabilitate from the problems and failures which led to Daniel's removal from their care.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. DCF has taken steps to encourage these parents to have a meaningful relationship with the child and to rehabilitate themselves, which they have been unable to accomplish.
 D. DISPOSITION
Daniel has been in foster care since 1997. He requires permanency, his social worker testified. His parents are no closer now to making the necessary personal changes to parent him than they were when he was removed from their care in 1997. They have completely abandoned him. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD),
CT Page 14381189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[because of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992).
Based upon the foregoing, the court finds that it is in the best interests of Daniel that the rights of his biological parents to him be terminated. The court orders that a termination of parental rights enter with respect to Susana G. and Larry V. as to Daniel. The Commissioner of the Department of Children and Families is hereby appointed the child's statutory parent. The court further orders that a permanency plan for Daniel be submitted within ninety days. A review plan for him shall be filed in accordance with state and federal law.
Barbara M. Quinn, Presiding Judge Child Protection Session